IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LIONEL LIMA, JR., and BARBARA-ANN DELIZO-LIMA; and CALVIN JON KIRBY II, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  vs.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY; THE LAW OFFICE OF DAVID B. ROSEN, a Hawaii professional corporation; DAVID B. ROSEN, individually; et al.,<br><br>        Defendants.<br>_____ | CIVIL NO. 12-00509 SOM/RLP<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS |
| EVELYN JANE GIBO, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>U.S. BANK NATIONAL ASSOCIATION, as known as U.S. BANK N.A., a national banking association; THE LAW OFFICE OF DAVID B. ROSEN, a Hawaii professional corporation; DAVID B. ROSEN, individually; et al.,<br><br>        Defendants.<br>_____ | CIVIL NO. 12-00514 SOM/RLP |

**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS**

I.      INTRODUCTION.

Before this court are motions to dismiss in two cases that, while not consolidated, raise nearly identical issues. This court therefore considers the motions together, in the interest of efficiency.

The first case arises from alleged conduct relating to the nonjudicial foreclosure of property owned by Plaintiffs Lionel Lima, Jr., and Barbara-Ann Delizo-Lima ("the Limas"), as well as property owned by Plaintiff Calvin Jon Kirby II (all three plaintiffs referred to collectively as "the Lima Plaintiffs"). The Lima Plaintiffs are suing Defendant Deutsche Bank and its attorney, Defendant David B. Rosen, in his individual and professional capacity.

The second case arises from alleged conduct relating to the nonjudicial foreclosure of Plaintiff Evelyn Gibo's property. Gibo is suing Defendant U.S. Bank and its attorney, Defendant David B. Rosen, in his individual and professional capacity.[1]

Currently before the court are Deutsche Bank's Motion to Dismiss the Lima Plaintiffs' First Amended Complaint, U.S. Bank's Motion to Dismiss Gibo's First Amended Complaint, and

---

[1] Both cases are filed as putative class actions, but no class has been certified to date.

Rosen's Motions to Dismiss the First Amended Complaints in both the <u>Lima</u> and <u>Gibo</u> cases.  The court grants all of the motions.

**II.     BACKGROUND.**

    **A.  The Lima Plaintiffs' Action**.

        **1.  The Lima Property Foreclosure**.

In October 2005, the Limas acquired property in Pearl City ("the Lima Property") subject to a mortgage of $169,000 ("the Lima Mortgage").  Lima First Am. Compl., ECF No. 14-7 ¶¶ 22, 23.  On or about January 30, 2009, the Lima Mortgage was assigned to Deutsche Bank.  <u>Id.</u> ¶ 28.  Shortly thereafter, Deutsche Bank initiated foreclosure proceedings with respect to the Lima Property pursuant to Hawaii Revised Statutes and the power of sale contained in the mortgages.  <u>Id.</u> ¶ 30.

As part of the foreclosure proceedings, Deutsche Bank recorded a "Notice of Mortgagee's Intention to Foreclose Under Power of Sale" (the "Lima Notice of Sale") on March 17, 2009. <u>Id.</u> ¶ 31.  The Lima Notice of Sale stated that the Lima Property was being sold "AS IS" and "WHERE IS" and "without covenant or warranty, either express or implied, as to title, possession or encumbrances."  The Lima Notice of Sale thus indicated that the Lima Property would be conveyed via a quitclaim deed.  <u>Id.</u> ¶ 32.

The Lima Plaintiffs allege that, at the public auction sale, the successful bidder "bid substantially below the market price of the [Lima] Property."  <u>Id.</u> ¶ 36.  Deutsche Bank provided

a limited warranty deed, not the advertised quitclaim deed, to the successful bidder.  Id.  The Lima Plaintiffs allege that this bidder resold the Lima Property "for approximately $50,000 more than the bid price within less than four months."  Id.  At the time of the foreclosure, the Limas "owed more than $40,000 to another entity under a second mortgage on the Lima Property." Id. ¶ 38.

### 2.   The Kirby Property Foreclosure.

In September 2006, Kirby acquired property in Pahoa ("the Kirby Property") subject to a mortgage of $200,000 ("the Kirby Mortgage").  Id. ¶¶ 24, 25.  The mortgagee of record on the Kirby Mortgage was Mortgage Electronic Registration Systems, Inc. ("MERS"), an agent or nominee for Deutsche Bank.  Id. ¶ 29.

On March 13, 2009, Deutsche Bank recorded a "Notice of Mortgagee's Intention to Foreclose Under Power of Sale" (the "Kirby Notice of Sale").  Id. ¶ 42.  The Kirby Notice of Sale was published in the Hawaii Tribune-Herald on January 28, 2009, February 4, 2009, and February 11, 2009.  Id. ¶ 45.  The Kirby Notice of Sale advertised a public auction scheduled for March 20, 2009, id. ¶ 43, but the auction was delayed until September 18, 2009.  Id. ¶ 49.  Kirby alleges that Deutsche Bank did not publish a notice of the postponed auction's rescheduled date and time.  Id.

4

### 3. The Lima Plaintiffs' Allegations Against Deutsche Bank and Rosen.

The Lima Plaintiffs allege that Deutsche Bank's practice of issuing Notices of Sale ("Notices") providing for quitclaim deeds "had the foreseeable effect of discouraging potential buyers and caused the auction prices to be lower than they would have been if the sales had been advertised as conveying the interest in property that [the Lima] Plaintiffs had pledged with the mortgage, i.e., with at least a warranty deed." See, e.g., id. ¶ 35. The Lima Plaintiffs contend that "[a]dvertising sale by quitclaim deed in these circumstances was not reasonably calculated to obtain the best possible price or to give the property owner the best advantage and was therefore a breach of duty by Deutsche Bank." Id. ¶ 40. At the hearing on the present motions on April 22, 2013, the Lima Plaintiffs clarified that this claim was brought against only Deutsche Bank, not Rosen.

The Lima Plaintiffs also allege that Deutsche Bank's postponement of the Kirby Property auction without publication of any notice stating the new date and time was contrary to the Kirby Mortgage's publication requirement and "had the foreseeable effect of limiting and depressing attendance at postponed auctions and causing auction prices to be lower than they would have been if postponement notices had been published." Id. ¶ 50. Kirby alleges that Rosen, as an attorney for Deutsche Bank, was

"responsible for formulating, implementing, devising, recommending, validating the purported legality of, and/or authorizing" the allegedly unlawful practice of conducting a postponed auction without published notice. Id. ¶ 51. Both Rosen and Deutsche Bank are sued in connection with this alleged practice.

Along with asserting violations of Hawaii's nonjudicial foreclosure statute, section 667-5 of Hawaii Revised Statutes, the Lima Plaintiffs assert that the section 667-5 violations also constitute unfair and deceptive acts or practices ("UDAP") in violation of section 480-2 of Hawaii Revised Statutes.

**4.   Deutsche Bank's Motion to Dismiss.**

In its Motion, Deutsche Bank raises several reasons that the Lima Plaintiffs' First Amended Complaint should be dismissed. Motion, ECF No. 19 at 2-4. First, Deutsche Bank argues that the Lima Plaintiffs lack standing to bring claims against Deutsche Bank in any capacity other than its trustee capacity. Id. at 10-11. Second, Deutsche Bank asserts that the Lima Plaintiffs lack standing to assert claims against Deutsche Bank as a trustee for unrelated trusts, because any alleged injury is not "fairly traceable" to those trusts. Id. at 11-13.

Third, Deutsche Bank claims that the Lima Plaintiffs' allegations are inadequate under Rule 8(a)(2) of the Federal Rules of Civil Procedure. Id. at 13-22. Fourth, Deutsche Bank

says that the Lima Plaintiffs' claims are barred because the Lima Plaintiffs: (1) failed to give contractually required notice of perceived breaches of the mortgages to the other party, and to give that party an opportunity to cure, and (2) "failed to raise their challenges to the foreclosure sales prior to their properties being sold at auction and title passing."  Id. at 22-25.  Fifth, Deutsche Bank argues that the Lima Plaintiffs fail to adequately plead their UDAP claim.  Id. at 25-38.

### 5. Rosen's Motion to Dismiss

Rosen argues that the Lima Plaintiffs' claims fail because Rosen does not owe the Lima Plaintiffs a duty of care.  Motion to Dismiss Lima at 11-15, ECF No. 30.  In addition, Rosen argues that the Lima Plaintiffs' UDAP claims fail as a matter of law.  Id. at 15-20.

### B.  The Gibo Action.

#### 1.  The Gibo Property Foreclosure.

In December 2005, Gibo and Daniel Cheung acquired property in Ewa Beach (the "Gibo Property") subject to a mortgage of $400,792 (the "Gibo Mortgage").  First Am. Compl. ¶¶ 22, 23.  Gibo says that Cheung did not sign the promissory note and is therefore not personally liable on the promissory note.  Id. at 23.

In July 2010, the Gibo Mortgage was assigned to U.S. Bank.  Id. ¶ 26.  Shortly thereafter, U.S. Bank, acting as

7

trustee, initiated foreclosure proceedings against the Gibo Property pursuant to Hawaii Revised Statutes and the power of sale contained in the Gibo Mortgage. Id. ¶ 27.

As part of its foreclosure proceedings, U.S Bank recorded a "Notice of Mortgagee's Intention to Foreclose Under Power of Sale" (the "Gibo Notice of Sale") on July 22, 2010. Id. ¶ 28. The Gibo Notice of Sale was published in the Honolulu Star-Advertiser, a daily newspaper, on July 30, 2010, August 6, 2010, and August 13, 2010. Id. ¶ 31. Among other things, the Gibo Notice of Sale indicated that the Gibo Property would be sold "without covenant or warranty, either express or implied, as to title, possession or emcumbrances," and that the Gibo Property would be conveyed by quitclaim. Id. ¶ 39. The Gibo Notice of Sale advertised a public auction for the Gibo Property to be held at noon on August 27, 2010, id. ¶¶ 29-30, but the auction was delayed until September 17, 2010. Id. ¶¶ 33-35.

The Gibo Property was sold at the auction for $326,772. Id. ¶ 43. At the time of the foreclosure, Gibo "owed approximately $100,000 to another entity under a second mortgage on the Property." Id. ¶ 45.

**2. Gibo's Allegations Against U.S. Bank.**

Gibo alleges that U.S. Bank "knew or through the exercise of reasonable care should have known that there were no superior claims of title or priority to its own claim and that it

therefore had the power and the duty to market and sell the Gibo Property in fee simple, with covenants and warranties of title and encumbrances, as it was when it was mortgaged by Plaintiff and encumbered with the power of sale under the Mortgage." Id. ¶ 40.

Gibo alleges that U.S. Bank's actions violated Hawaii's UDAP law in two ways: (1) U.S. Bank failed to obtain the best price for the Gibo Property because the Gibo Notice of Sale advertised that the Gibo Property would be conveyed by quitclaim; and (2) the failure to "publish" a notice indicating the postponement of the foreclosure sale constituted a violation of both the Gibo Mortgage and section 667-5 of Hawaii Revised Statutes.

### 3. U.S. Bank's Motion to Dismiss.

In its Motion, U.S. Bank raises numerous reasons that Gibo's First Amended Complaint should be dismissed. Motion at 2-3. First, U.S. Bank argues that Gibo "failed to name her co-borrower, Daniel Zepher Cheung, who is a required party pursuant to FRCP 19." Id. at 8. Second, U.S Bank contends that Gibo lacks standing to bring claims against U.S. Bank in any capacity other than its trustee capacity. Id. at 8-10. Third, U.S. Bank asserts that Gibo lacks standing to assert claims against U.S. Bank as a trustee for unrelated trusts. Id. at 10-11.

Fourth, U.S. Bank claims that Gibo's allegations are inadequate under Rule 8(a)(2) of the Federal Rules of Civil Procedure. Id. at 11-19. Fifth, U.S. Bank says that Gibo's claims are barred because she failed "to comply with a condition precedent in her mortgage and by the common law doctrine that challenges to a foreclosure sale must be brought before the sale and transfer of title." Id. at 20. Sixth, U.S. Bank argues that Gibo fails to adequately plead her UDAP claim. Finally, U.S. Bank claims that Gibo's UDAP claim is barred by the litigation privilege. Id. at 36.

### 4. Rosen's Motion to Dismiss.

Rosen argues that Gibo's claims fail because Rosen does not owe Gibo a duty of care. Motion to Dismiss Gibo at 11-15, ECF No. 38-1. In addition, Rosen argues that Gibo's UDAP claims fail as a matter of law. Id. at 15-20.

### III. STANDARD OF REVIEW.

Although Deutsche Bank and U.S. Bank (collectively, the "Banks") argue that Plaintiffs have not been injured by the Banks and therefore lack "standing" to sue the Banks, the court does not in the present order address this jurisdictional challenge, having already rejected the challenge in connection with the court's ruling on Plaintiffs' motion to remand these cases. The court has similarly already addressed the Banks' "standing" argument that Plaintiffs are limited to suing the Banks only as

trustees. The Banks also argue that Plaintiffs lack standing to proceed against the Banks in connection with the Banks' status as trustees for trusts unrelated to Plaintiffs' mortgages. Any claim implicating a trust unrelated to Plaintiffs' mortgages appears to involve mortgages entered into by class members. As the claims of class members other than named Plaintiffs are not currently before the court, the court need not address the "unrelated trust" issue here.

What remain are the nonjurisdictional claims against the Banks and Rosen. Dismissal of such claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)). "[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted); accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 677.

IV. ANALYSIS.

    A. Plaintiffs' Allegations Against the Banks.

The Lima Plaintiffs and Gibo assert two allegations against the Banks. First, Plaintiffs argue that the Banks breached a duty to Plaintiffs by advertising foreclosure sales through which only quitclaim deeds would be provided. Second, Plaintiffs argue that the Banks violated section 667-5 of Hawaii Revised Statutes by failing to publish notices of the postponements of the foreclosure auctions. Plaintiffs assert that the Banks' alleged failures on these fronts constitute both a violation of section 667-5 as well as a violation of section 480-2 of Hawaii Revised Statutes, which sets forth the prohibition on UDAP. The court addresses each argument in turn.

12

### 1. Hawaii's Nonjudicial Foreclosure Law Does Not Bar Quitclaim Deeds or Advertisements Stating That Only Quitclaim Deeds Will Be Provided.

Hawaii law does not require a nonjudicial foreclosure sale to result in a conveyance by more than a quitclaim deed. See Haw. Rev. Stat. § 667-5.

The court asked Plaintiffs to come to the hearing prepared to explain why the Banks had to provide more than a quitclaim deed in the nonjudicial foreclosure context when, in the judicial foreclosure context, there was no such obligation. In response to the court's questions, Plaintiffs referred to the absence in the nonjudicial foreclosure process of the protection of court supervision. Plaintiffs also referred to <u>Ulrich v. Security Inv. Co.</u>, 35 Haw. 158 (Haw. 1939), a case they had relied on heavily in their briefs.

<u>Ulrich</u> involved an attorney who owed $1,500 to his law partner. The debt was secured by a chattel mortgage assigning the borrower's interest in the general partnership and his one-half interest in all fees to be earned by the firm. The creditor-partner exercised a power of sale in the mortgage and held an auction at which he sold the partnership interest to himself for $250, without disclosing to potential third-party buyers prior to the auction that the law firm had a claim for about $200,000 in fees in a case on which the mortgagor-partner had worked for over a decade. <u>Id.</u> at 173. The Hawaii Supreme

Court reasoned that the "legal duties imposed upon the mortgagee required it to use all fair and reasonable means in obtaining the best prices for the property on sale." Id. at 168.  Because the foreclosing partner took "wrongful and unfair advantage" of his partner, the court set aside the sale.  Id.

At the hearing in the present case, Plaintiffs insisted that Ulrich was "inextricably intertwined" with section 667-5. The court disagrees.  First, and most significantly, Ulrich involved a chattel mortgage.  By contrast, section 667-5 "is inapplicable if the mortgagee is foreclosing as to personal property only."  Haw. Rev. Stat. § 667-5(g).  Second, to the extent the Hawaii Legislature intended section 667-5 to embody any principle articulated in Ulrich, the Legislature certainly had the ability to include any such principle in the nonjudicial foreclosure statute it passed.  Yet section 667-5 nowhere suggests any principle derived from Ulrich on which Plaintiffs now rely.  Certainly, section 667-5 does not state that a conveyance resulting from a nonjudicial foreclosure sale must be by limited warranty deed, or that an advertisement for a foreclosure auction must promise a limited warranty deed.

Ulrich was decided in 1939, many decades before the Hawaii Legislature first passed Hawaii's nonjudicial foreclosure statute in 2008.  The language in Ulrich was therefore available to the Hawaii Legislature for inclusion or paraphrasing in any

14

statute.  Plaintiffs appear to be urging this court to read into statutory language requirements that the Legislature could have, but clearly did not, expressly adopt.  In short, Plaintiffs are asking this court to rewrite section 667-5.

While borrowers might indeed benefit from additional statutory protections when borrowers do not have the benefit of court oversight, this court declines to overstep its proper role by inserting into section 667-5 such additional protections.  The court is particularly concerned that it could create a host of problems if it were to rule, without further detail, that a quitclaim deed or an advertisement promising only a quitclaim deed violated a court-created duty to use reasonable means to obtain the best price in a foreclosure sale.  Because properties sometimes cannot be inspected, a bar on conveyance by quitclaim could mean no sale could occur.  Moreover, a bar on conveyance by quitclaim or on an advertisement promising only a quitclaim could raise questions about what else is required or barred.  In short, the language Plaintiffs ask this court to read into section 667-5 could lead to issues a legislature is far better positioned to address than a court is.

>    **2.   Publication of Auction Postponement is Not Required by Hawaii Law.**

Nor does Hawaii law require that notice of the postponement of a nonjudicial foreclosure sale be published. Rather, section 667-5(d) of the Hawaii Revised Statutes provides:

15

"Any sale, of which notice has been given . . . may be postponed from time to time by public announcement made by the mortgagee or by a person acting on the mortgagee's behalf." The First Amended Complaints do not allege that public announcements were not made. Instead, Plaintiffs appear to be contending that the only permissible public announcement is a "published notice." No statute, contract provision, or case authority equates "announcement" with "publication." Nothing in either FAC suggests a violation of the "public announcement" requirement.

Plaintiffs also argue that the Banks violated the provision of Hawaii's nonjudicial foreclosure statute that requires the foreclosing attorney to "[g]ive any notices and do all acts as authorized or required by the power contained in the mortgage." See Haw. Rev. Stat. § 667-5(a)(3). Plaintiffs contend that their mortgages require publication in the event a foreclosure auction is postponed. In particular, Plaintiffs point to the mortgage provision that states, "Lender shall publish a notice of sale and shall sell the Property at the time and place and under the terms specified in the notice of sale." See, e.g., Gibo FAC ¶ 32. The Banks undisputably published notices setting the original foreclosure auctions, as clearly required by the mortgages. Plaintiffs' argument is that a new notice of sale had to be published whenever the time or place

changed, so that the time and place was always as stated in a published notice.

But the notices expressly provide: "This sale may be postponed from time to time by public announcement made by Mortgagee or someone acting on Mortgagee's behalf."[2]  Gibo Notice, ECF No. 22-6.  See also Kirby Notice, ECF No. 17-6 ("This sale may be postponed from time to time by public announcement made by Mortgagee or someone acting on Mortgagee's behalf.").  Because the notices to which the mortgages refer expressly authorize postponements "by public announcement," while not mentioning publication, this court concludes that a postponed foreclosure sale that has been publicly announced occurs "at the time and place and under the terms specified in the notice of sale."

The Gibo Mortgage requires the lender to publish "a notice of sale," not "a notice of sale for each postponed date."  If the mortgage language were read as requiring multiple publications, the term "public announcement" would be

---

[2] When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond.  See Fed. R. Civ. P. 12(b).  A court may, however, consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment.  See Van Buskirk v. CNN, 384 F.3d 977, 980 (9th Cir. 2002).

meaningless.  This court seeks to give meaning to the terms in each of the provisions before it.  To do that, this court differentiates between the requirement to "publish" and the requirement to provide a "public announcement."  The court concludes that a lender that publishes an initial notice of sale and thereafter publicly announces a postponement of the foreclosure auction without changing the place or the terms of the auction satisfies section 667-5, as well as mortgage language such as that quoted above from the Gibo Mortgage, and language such as that quoted above from the Gibo Notice of Sale.

Because Plaintiffs' allegations regarding advertisement of or conveyance by a quitclaim deed, as well as allegations regarding the postponement of foreclosure sales, fail to assert actionable misconduct by the Banks, the court also concludes that Plaintiffs do not state a UDAP violation.  These conclusions make it unnecessary for this court to address the Banks' other arguments for dismissal.

**B.    Plaintiffs' Allegations Against Rosen.**

At the hearing, Plaintiffs clarified that their only allegation against Rosen pertained to his alleged involvement in the postponement scheme, not to the quitclaim deed allegations.  The court dismisses Plaintiffs' allegations against Rosen with regard to the alleged postponement scheme for the reasons set forth above.

**V. CONCLUSION.**

The court grants the motions. This disposes of all claims in the Gibo and Lima cases. However, given Plaintiffs' references to possible Second Amended Complaints, the court will not enter judgment immediately. If Plaintiffs wish to file a Second Amended Complaint, Plaintiffs must seek leave by filing a motion directed to the Magistrate Judge on or before May 21, 2013. Any such motion shall include as an attachment a copy of the proposed Second Amended Complaint. This court expresses no opinion as to whether any such motion should or should not be granted. If Plaintiffs fail to seek leave on or before May 21, 2013, the Clerk of Court shall enter judgment for the Banks and Rosen and close these cases on May 22, 2013.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 30, 2013.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Lionel Lima, et al., v. Deutsche Bank, et al., Civ. No. 12-00509 SOM/RLP **AND** Evelyn Gibo v. U.S. Bank National Association, 12-00514 SOM-RLP, ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS