## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LIONEL LIMA, JR.; BARBARA-ANN DELIZO-LIMA; and CALVIN JON KIRBY, II, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>     vs.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY; THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION; DAVID B. ROSEN; and DOE DEFENDANTS 1-50,<br><br>       Defendants. | CIVIL NO. 12-00509 SOM-RLP<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |
| EVELYN JANE GIBO, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>     vs.<br><br>U.S. BANK NATIONAL ASSOCIATION, also known as U.S. Bank N.A., a national banking association; THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION, a Hawaii professional corporation; DAVID B. ROSEN, individually; and DOE DEFENDANTS 1-50,<br><br>       Defendants. | CIVIL NO. 12-00514 SOM-RLP |

## <u>TABLE OF CONTENTS</u>

I.     **INTRODUCTION** ........................................................................1

II.    **LEGAL STANDARD** ..................................................................3

III.   **ARGUMENT**...............................................................................4

      A.    **Rule 11 Sanctions Are Necessary To Deter Similar Future Improper Conduct By The Bickerton/Perkin Firms**. .....................4

            a.    **The Bickerton/Perkin Firms' Harassment of the Rosen Defendants and Others Needs to be Deterred.**......................4

            b.    **The Bickerton/Perkin Firms' Injury to the Rosen Defendants.** ................................................................6

            c.    **Plaintiffs' Counsel's Improper and Blatant Forum Shopping.** ...............................................................8

      B.    **The Bickerton/Perkin Firms Have Further Harassed The Rosen Defendants Due To The Rule 11 Order's Incomplete Findings.** ....9

      C.    **The Motion Should Be Granted Based On The Standard Articulated By The Magistrate Judge In The Gibo/Lima Rule 11 Order.** ..............................................................12

            i.    **First Prong** .............................................................12

            ii.    **Second Prong** .........................................................16

V.     **CONCLUSION** ..........................................................................24

# TABLE OF AUTHORITIES

# CASES

Bald v. Wells Fargo Bank, N.A., Civil No. 13-00135-SOM-KSC (D. Haw) ............ ..................................................................................5, 8, 13, 15, 19, 21

Benoist v. U.S. Bank National Association, 2012 WL 3202180, at *8 (D. Haw. Aug. 3, 2012) ..................................................................14, 19, 20, 21 22

Gibo v. U.S. Bank National Association, et al., Civil No. 12-00514-SOM-RLP (D. Haw.)............................................................................4, 5, 7, 13, 18, 21

Holgate, 425 F.3d at 677 ........................................................................16

Ilar v. Routh Crabtree Olsen, et al., Civ. No. 13-145 (SOM-RLP)... ......................4

In re Kekauoha, 2007 WL 1752266 (Bankr. Haw. June 15, 2007)............................ ............................................................................ 15, 18, 19, 20, 22, 23

In re Kekauoha, 674 F.3d 1083, 1088 (9th Cir. (Haw.) 2012) .................................... ............................................................................ 14, 18, 19, 20, 22, 23

Kuroiwa v. Lingle, 2008 WL 4483772 (D. Haw. Sept. 29, 2008) ...........................4

Lima v. Deutsche Bank National Trust Co. et al., Civil No. 12-00509 SOM-RLP (D. Haw.).....................................................................4, 5, 7, 13, 18, 21

Russell L. Hungate v. The Law Office of David B. Rosen, a Law Corporation and David B. Rosen, Civ. No. 13-1-2146-08 (RAN) ...................................................2, 3

Sigwart and Dahlberg v. The Law Office of David B. Rosen, a Law Corporation and David B. Rosen, Civ. No. 13-1-2097-07 (ECN)....................................2, 3, 5, 8

Silva v. Lopez, 5 Haw. 262 (Haw. 1884) ...........................................................21, 22

Ulrich v. Security Inv. Co., 35 Haw. 158 (Haw. 1939).....................................21, 22

Zaldivar, 780 F.2d at 831 .......................................................................17

## <u>STATUTES</u>

HRS § 480 ..................................................................................................10, 11

HRS § 667-5....................................................... 11, 12, 14, 15, 18, 19, 20, 22, 23

HRS § 667-5 (d) ..................................................................................................13

HRS § 667-5 (g) .................................................................................................22

## <u>RULES</u>

Fed. R Civ P. 7(b) ................................................................................................1

Fed. R Civ P. 11 ......................................... 1, 2, 3, 4, 8, 9, 16, 17, 19, 20, 21, 22, 23

Fed. R Civ P. 11 (c)(4) .........................................................................................6

LR 60.1 ...........................................................................................................1, 3

LR 74.1 ...........................................................................................................1, 3

LR 74.2...............................................................................................................9

## <u>TREATISES</u>

21 C.J.S. Covenants § 16 .....................................................................................18

7 G. Thompson, Real Property § 3178, at 240 (1962 repl.) ...................................18

## MEMORANDUM IN SUPPORT OF MOTION

DEFENDANTS THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION (the "Law Office"), and DAVID B. ROSEN ("Rosen") (collectively referred to herein as the "Rosen Defendants"), by and through their counsel, The Law Office of David B. Rosen, ALC, respectfully submit this Memorandum in Support of their Motion for Reconsideration regarding the [Gibo Dkt. No. 125] [Lima Dkt. No. 96] Order Denying Rosen Defendants' Motions for Rule 11 Sanctions ("Rule 11 Order").

### I.   INTRODUCTION

Pursuant to Rule 7(b) of the Federal Rules of Civil Procedure and Local Rules of Practice for the United States District Court for the District of Hawaii ("LR") Rules 60.1 and 74.1, the Rosen Defendants submit this Motion to respectfully request that this Court reconsider its Rule 11 Order, which denied the Rosen Defendants' [Gibo Dkt. No. 92] [Lima Dkt. No. 75] Motions for Rule 11 Sanctions filed on May 1, 2013 (the "Motion").

First, the Rosen Defendants respectfully maintain that Rule 11 sanctions are necessary to deter similar future improper conduct by Plaintiffs' counsel (the Bickerton, Lee, Dang & Sullivan and Perkin & Faria firms ("Bickerton/Perkin

Firms")[1]) – i.e. filing and thereby harassing the Rosen Defendants with the same baseless claims.   Rule 11 sanctions are necessary particularly in light of the following two newly filed Complaints by the Bickerton/Perkin Firms against the Rosen Defendants: (i) Complaint filed on July 31, 2013 in <u>SIGWART and DAHLBERG v. THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION and DAVID B. ROSEN</u>, Civ. No. 13-1-2097-07 (ECN), Circuit Court of the First Circuit, State of Hawaii (the "Sigwart/Dahlberg Complaint" or the "Sigwart/Dahlberg Case"); and (ii) Complaint filed on August 6, 2013 in <u>RUSSELL L. HUNGATE v. THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION and DAVID B. ROSEN</u>, Civ. No. 13-1-2146-08 (RAN), Circuit Court of the First Circuit, State of Hawaii (the "Hungate Complaint" or the "Hungate Case") (the Sigwart/Dahlberg Case and the Hungate Case are collectively referred to as the "New Circuit Court Cases").  <u>See</u> the Declaration of David B. Rosen ("Rosen Decl."), filed concurrently herewith, for a true and correct

---

[1] While plaintiffs' counsel in the Gibo/Lima, Bald, and New Circuit Court Cases differ slightly by case, they are made up of attorneys from the following firms: (1) Bickerton, Lee, Dang & Sullivan (James J. Bickerton and Stanley H. Roehrig); (2) Perkin & Faria LLLC (John F. Perkin and Brandee J.K. Faria); (3) Affinity Law Group (Raymond C. Cho and Van-Alan H. Shima); and (4) the Law Office of Stanley H. Roehrig (Stanley H. Roehrig).   Upon information and belief, the Bickerton, Lee, Dang & Sullivan and Perkin & Faria firms are the principals behind the Five Cases. <u>See</u> Rosen Decl., at ¶ 5.  Thus, Plaintiffs' counsel herein is referred as the "Bickerton/Perkin Firms."

2

copy of the Sigwart/Dahlberg and Hungate Complaints, <u>Exhibits A</u> and <u>B</u>, respectively.

Second, the Rosen Defendants respectfully maintain that the Honorable Magistrate Judge Richard L. Puglisi's (the "Magistrate Judge") analysis in the Rule 11 Order was incomplete and resulted in an erroneous conclusion regarding the second prong of the relevant Rule 11 standard.

Due to the New Circuit Court Cases and the need to deter future improper conduct by Plaintiffs' counsel, and due to the risk of an incomplete and/or erroneous assessment of the law, the Rosen Defendants respectfully maintain that reconsideration and/or clarification is warranted pursuant to LR 60.1 and 74.1.

## II.   <u>LEGAL STANDARD</u>

LR 74.1 provides that "[a]ny party may move for reconsideration before the magistrate judge pursuant to LR60.1."  LR 60.1 states the following in pertinent part:

> Motions for reconsideration of interlocutory orders may be brought only upon the following grounds:
>
> (a) ***Discovery of new material facts not previously available***;
> (b) Intervening change in law; or
> (c) ***Manifest error of law or fact***.

LR 60.1 (emphasis added).

## III.   ARGUMENT

### A.   Rule 11 Sanctions Are Necessary To Deter Similar Future Improper Conduct By The Bickerton/Perkin Firms.

#### a. The Bickerton/Perkin Firms' Harassment of the Rosen Defendants and Others Needs To be Deterred.

One of the purposes of imposing sanctions under FRCP Rule 11 is to deter similar future improper conduct.  See e.g., Kuroiwa v. Lingle, 2008 WL 4483772 (D. Haw. Sept. 29, 2008) (Judge Seabright presiding); FRCP(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.").  In this instance, the imposition of a substantial sanction against the Bickerton/Perkin Firms herein is necessary to deter their continuing to file frivolous and harassing claims against the Rosen Defendants and others.[2]

There are **_three_** nearly identical cases that were filed in the instant Court, by the Bickerton/Perkin Firms against the Rosen Defendants.  The Rosen Defendants were the prevailing party in the instant Gibo/Lima Cases,[3] and the Perkin Firm

---

[2] There is at least one other pending lawsuit brought by the Bickerton/Perkin Firms that asserts similar, if not identical, claims against other attorneys.  See Ilar v. Routh Crabtree Olsen, et al., Civ. No. 13-145 (SOM-RLP).

[3] Lima v. Deutsche Bank National Trust Co. et al., Civil No. 12-00509 SOM-RLP (D. Haw.) ("Lima case") and Gibo v. U.S. Bank National Association, Civil No. 12-00514 SOM-RLP (D. Haw.) ("Gibo case") (collectively, "Gibo/Lima Cases").

voluntarily dismissed the Rosen Defendants in the third case <u>Bald v. Wells Fargo Bank, N.A.</u>, Civil No. 13-00135-SOM-KSC (D. Haw.) ("Bald Case") only after the Rosen Defendants prevailed in the Gibo/Lima Cases and expended a considerable amount of time and expense defending themselves in the Bald Case, including filing a Motion for Rule 11 Sanctions against the Bickerton/Perkin Firms that is still pending.

*After* the Rule 11 Order was entered on July 29, 2013, which denied the Rosen Defendants' Motion for Rule 11 Sanctions, the Bickerton/Perkin Firms filed a ***fourth*** and ***fifth*** lawsuit (i.e. the New Circuit Court Cases) (the Gibo/Lima, Bald, and New Circuit Court Cases are collectively referred to as the "Five Cases") against the Rosen Defendants asserting the same claim found to be baseless in the Gibo/Lima and Bald Cases.[4]

For example, at paragraphs 34, 40, 41, 43-56, and 59 of the Sigwart/Dahlberg Complaint*, the Bickerton/Perkin Firms again make the same failed allegations and claims as made herein*; i.e., that the Rosen Defendants (as opposed to the Rosen Defendants' client(s); i.e., the foreclosing mortgagee(s))

---

[4] Even though the Rosen Defendants were voluntarily dismissed from the Bald Case, the Court found the subject underlying claim against the lender to be baseless and granted the lender's motion to dismiss. <u>See</u> *infra*, III.C.i.; Bald Case Dkt. No. 45 (Order Granting Wells Fargo's Motion to Dismiss ("Bald MTD Order")).

breached a duty and/or committed an unfair and deceptive trade practice by not publishing postponement notices in a local newspaper.

Consequently, the Rosen Defendants respectfully maintain that Plaintiffs' counsel's conduct in continuing to assert the same discredited baseless claims in multiple cases, is clear harassment and the Rosen Defendants respectfully request that said conduct needs to be punished by this Court in the form of imposing sanctions as both permitted *and required* by FRCP Rule 11(c)(4).  If the Rule 11 Order is not reconsidered and sanctions are not imposed on the Bickerton/Perkin Firms, this will only further bolster the Bickerton/Perkin Firms' bravado in continuing to harass lenders' counsel, including but not limited to the Rosen Defendants.

### b. __The Bickerton/Perkin Firms' Injury to the Rosen Defendants.__

The Five Cases by the Bickerton/Perkin Firms, and threat of future cases, have caused the Rosen Defendants financial and physiological injury.  The Five Cases are not only discouraging the Rosen Defendants from continuing to represent lenders in foreclosure related matters; they are making it extremely difficult for the Rosen Defendants to engage in the practice of law.  <u>See</u> Rosen Decl., ¶ 6.  The Law Office of David B. Rosen, ALC, consists only of Mr. Rosen, a part-time associate (who is about to go on maternity leave for the next 4 months),

and support staff.  Id., ¶ 7.  During the past 11 months, the actions of the Bickerton/Perkin Firms have caused the Rosen Defendants to decline new cases and clients, and transfer to other attorneys existing and further work from existing clients.  Id., ¶¶ 8 and 9.  Thus, having to defend against the Bickerton/Perkin Firms' continuing frivolous attacks against the Rosen Defendants means that the Rosen Defendants do not have either the time or resources to represent other fee paying clients and earn income to maintain the Law Office of David B. Rosen, ALC, and support its employees and by extension, their families.  Id., ¶ 10.

Moreover, the actions of the Bickerton/Perkin Firms have also caused Mr. Rosen physiological injury.  Id., ¶ 11.  In particular, in March 2013, Mr. Rosen contracted Shingles, which is a stress induced illness, which Mr. Rosen attributes in significant part to having to defend against the Five Identical Cases brought by the Bickerton/Perkin Firms.  Id.

Moreover, the manner in which the Bickerton/Perkin Firms have maintained the Five Cases has been unreasonable to the point of being intentionally designed to harass and injure the Rosen Defendants.  The New Circuit Court cases continue this behavior.

For example, in the Gibo/Lima Cases, the Bickerton/Perkin Firms attempted to extract insurance proceeds from the Rosen Defendants early on.  See Rosen

Decl., ¶ 12 and <u>Exhibit C</u>.  In the Bald Case, the plaintiffs failed to timely serve the Rosen Defendants, refused to grant the Rosen Defendants a reasonable extension of time to respond to the First Amended Complaint, and refused to articulate the legal basis for the claims asserted against the Rosen Defendants. <u>See</u> Rosen Decl., ¶¶ 12 and 13, and <u>Exhibit C</u>.

Without the imposition of Rule 11 sanctions, the Bickerton/Perkin Firms have already and are likely to continue their injurious conduct.  In particular, in the New Circuit Court Cases, the Bickerton/Perkin Firms refused the Rosen Defendants reasonable requests for an extension of time to respond to the New Circuit Court Complaints and for informal initial discovery of critical information bearing on the merits of the claims asserted therein.  <u>See</u> Rosen Decl., ¶ 14 and <u>Exhibit D</u>.

### c.  <u>Plaintiffs' Counsel's Improper and Blatant Forum Shopping.</u>

It is also significant that the Bickerton/Perkin Firms have filed the New Circuit Court Cases in state court and in the Sigwart/Dahlberg case did not name the foreclosing mortgagee involved in that foreclosure.  This was apparently done to defeat federal diversity jurisdiction and to evade this Court's previous adverse decisions and repercussions from continuing to waste judicial resources and engaging in frivolous conduct.  In so doing, the Bickerton/Perkin Firms are engaging in blatant improper forum shopping.

All of this is believed to be part of the Bickerton/Perkin Firms' intentional and concerted strategy to discourage the Rosen Defendants and other attorneys from continuing to represent lenders in foreclosure related matters by suing the Rosen Defendants and other attorneys personally for their representation of mortgage lenders.  See Rosen Decl., ¶ 15.  The Bickerton/Perkin Firms also appear to be filing these cases to generate publicity for themselves for their personal pecuniary benefit.   See Rosen Decl., ¶ 16.

In summary, the imposition of a substantial sanction against the Bickerton/Perkin Firms is necessary to deter their continuing to file frivolous, harassing, and injurious claims against the Rosen Defendants and other attorneys who are engaged in the representation of mortgage lenders.  The filing of the New Circuit Court Cases and the Bickerton/Perkin Firms' refusal to grant reasonable professional requests are examples of the Bickerton/Perkin Firms' harassing intent following the entry of the Rule 11 Order, which warrants reconsideration of the Rule 11 Order and the imposition of Rule 11 sanctions as a deterrent.

### B.    The Bickerton/Perkin Firms Have Further Harassed The Rosen Defendants Due To The Rule 11 Order's Incomplete Findings.

On August 7, 2013, the Bickerton/Perkin Firms filed a 41-page "Objections Pursuant to LR 74.2" to the Order, plus exhibits and a supporting declaration (the "Appeal").   Gibo Dkt. No. 126; Lima Dkt. No. 97.   In the hefty Appeal, the

Bickerton/Perkin Firms continue to take unreasonable and untenable positions regarding the applicable law and the holding of the Order, signaling their clear intention to further harass and injure the Rosen Defendants.

In particular, the Bickerton/Perkin Firms challenge the Magistrate Judge's finding that the complaint was baseless and that prong 1 of the relevant test was met.  See e.g. Appeal, at 8 et seq. and 32 ("The Magistrate's Finding of 'Factually Baseless' Reflects a Mis-Understanding of the 'Baseless' Concept Because All Facts Were Undisputed Matters of Public Record"); see infra, III.C.i.

Consequently, the Rosen Defendants respectfully request that the Magistrate Judge address and enter detailed findings in a support of the conclusion that Plaintiffs could not maintain a Hawaii Revised Statutes ("HRS") Chapter 480 ("UDAP") claim against their adversary counsel as an addition ground upon which Plaintiffs' claims against the Rosen Defendants were baseless.  This is necessary because in addition to the two underlying claims against the various lenders, Plaintiffs sued the Rosen Defendants under UDAP as counsel for the foreclosing mortgagee.  Thus, Plaintiffs needed to overcome the added hurdle of establishing that they could maintain a UDAP claim against their adversary counsel, which they failed to do.  See e.g., [Gibo Dkt. No. 38-1, Lima Dkt No. 30-1,] Rosen Defendants' Motion to Dismiss, at 9-12 and 11-15, respectively ("Plaintiffs' Claims Against The Rosen Defendants Fails As A Matter of Law Because

Plaintiffs Have Not And Cannot Allege That The Rosen Defendants Owed Plaintiffs A Duty Of Care"), and 13 and 15, *et seq.*, respectively ("Plaintiffs' UDAP Claims Against The Rosen Defendants Fail As A Matter Of Law And Should Be Dismissed… 1. Plaintiffs Are Not 'Consumers' Within The Meaning Of Chapter 480 Of The Hawaii Revised Statutes.").

In fact, the Magistrate Judge previously held that "Plaintiff does not allege a special relationship between herself and the Rosen Defendants that would give rise to any duty owed by the Rosen Defendants to her. … As a result, it is obvious under the settled Hawaii law articulated above that Plaintiff has failed to state a claim against the Rosen Defendants for violations of HRS § 667-5."  [Gibo Dkt. No. 73] [Lima Dkt. No. 56] Gibo/Lima Findings and Recommendation To Deny Plaintiff's Motion For An Order of Remand Order, filed on January 29, 2013 ("Gibo/Lima F&R"), at 25.  While Judge Mollway ultimately did not reach this issue, due to her findings that the two underlying claims were baseless.  (See [Gibo Dkt. No. 94] [Lima Dkt. No. 77] Gibo/Lima Order Granting Defendants' Motions to Dismiss ("Gibo/Lima MTD Order"), at 18 ("[a]t the hearing, Plaintiffs clarified that their only allegation against Rosen pertained to his alleged involvement in the postponement scheme, not to the quitclaim deed allegations. The court dismisses Plaintiffs' allegations against Rosen with regard to the alleged postponement scheme for the reasons set forth above.")), this was an alternative

basis for the Rule 11 Motion asserted by the Rosen Defendants, and should be addressed.

### C.   The Motion Should Be Granted Based On The Standard Articulated By The Magistrate Judge In The Gibo/Lima Rule 11 Order.

The standard applied by the Magistrate Judge in denying the Rosen Defendants' Motion for Rule 11 Sanctions is as follows:

> [T]he district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it.

See Rule 11 Order, at 9.  There is no dispute that this is the proper standard to be applied in evaluating the Rosen Defendants' Rule 11 Motions.

### i.   First Prong.

The first prong of this test – i.e., whether the complaint is legally or factually baseless from an objective perspective – was clearly met.  See Rule 11 Order, at 11-12 (the Magistrate Judge concluded that the first prong was met and the claims asserted in the Gibo/Lima first amended complaints ("FACs") against the "Rosen Defendants are legally and factually baseless.").  Specifically, the *only* claim asserted against the Rosen Defendants in the FACs hinged on a determination as to whether postponements of non-judicial foreclosure auctions were required to be published under HRS § 667-5.

In addressing this claim, both the Magistrate Judge and Judge Mollway determined in the Gibo/Lima Cases (and in the Bald Case) that there was absolutely no basis in ***statute, case law, fact (contract), or otherwise*** that supported the plaintiffs' contentions that postponements of a non-judicial foreclosure were required to be published. <u>See</u> <u>e.g.</u>, Gibo/Lima F&R, at *8, *10, and *11 (the claims against the Rosen Defendants "'obvious[ly]' fail under 'settled' Hawaii law"). In particular, Judge Mollway in her [45] Order granting Wells Fargo's Motion to Dismiss in the Bald Case ("Bald MTD Order")[5] held:

> ### Publication of an Auction Postponement is Not Required by Hawaii Law.
>
> ***Hawaii law nowhere requires that notice of the postponement of a nonjudicial foreclosure sale be published in a newspaper.*** Rather, section 667-5(d) of the Hawaii Revised Statutes provides: "***Any sale, of which notice has been given . . . may be postponed from time to time by public announcement*** made by the mortgagee or by a person acting on the mortgagee's behalf." The First Amended Complaint does not allege that public announcements were not made. Instead, Plaintiffs appear to be contending that the only permissible public announcement is a "published notice" in a newspaper. No statute, contract provision, or case authority equates "announcement" with "publication in a newspaper."

---

[5] The Bald Case, and the pleadings and orders therein, are highly analogous to the Gibo/Lima Cases because the plaintiffs in all three cases asserted nearly identical claims against the subject lenders and the Rosen Defendants. <u>E.g.</u>, Bald MTD Order, at 10 ("[a]t the [Motion to Dismiss] hearing, the Plaintiffs acknowledged that their case was very similar to the <u>Lima</u> case…"). Additionally, Judge Mollway is the same District Court Judge presiding in the Gibo/Lima and Bald Cases.

Rosen Decl., Exhibit E (Bald MTD Order, at 10 and 13 (bold and italics emphasis added)).[6]

*Moreover*, statutory and case law set forth in the clearest possible language that *a postponement need only be publically announced*.  See HRS § 667-5 ("Any sale, of which notice has been given . . . *may be postponed from time to time by public announcement* made by the mortgagee or by a person acting on the mortgagee's behalf.") (emphasis added).  What constitutes a public announcement has been interpreted by the Ninth Circuit as well as the other federal courts in the District of Hawaii as being an "oral" announcement.  See e.g., In re Kekauoha, 674 F.3d 1083, 1088 (9th Cir. (Haw.) 2012) (agreeing with the bankruptcy court's interpretation and dictionary definition of 'public announcement,' which "captures the essence of what the statute requires: Mortgagees shall publicly announce the postponement of a foreclosure sale to a subsequent date."); Benoist v. U.S. Bank National Association, 2012 WL 3202180, at *8 (D. Haw. 2012) (finding that the

---

6  Moreover, in the Gibo/Lima MTD Order, Judge Mollway further clarified her position as follows:

> Plaintiffs appear to be urging this court to read into statutory language requirements that the Legislature could have, but clearly did not, expressly adopt. In short, Plaintiffs are asking this court to rewrite section 667-5.
>
> *                 *                 *
>
> *…this court declines to overstep its proper role by inserting into section 667-5 such additional protections.*

Gibo/Lima MTD Order, at 13-15 (emphasis added).

foreclosing mortgagee was permitted to postpone the foreclosure auction "by public announcement" made at the time and place of the scheduled auction); In re Kekauoha-Alisa, 2007 WL 1752266 (Bankr. Haw. June 15, 2007) (announcement means "an open, oral announcement to all those present").[7]

Elaborating on the above Ninth Circuit case law, Judge Mollway reiterated that "[n]o statute, contract provision, or case authority equates 'announcement' with "publication." Gibo/Lima MTD Order, at 16; Bald MTD Order, at 13.

Closing the circle completely, Judge Mollway noted that *the contract that existed between Plaintiffs and their respective mortgage lenders also did not require a postponement to be published*. Gibo/Lima MTD Order, at 17-18 ("[t]he Gibo Mortgage requires the lender to publish "a notice of sale," not "a notice of sale for each postponed date." If the mortgage language were read as requiring multiple publications, the term "public announcement" would be meaningless.").

---

[7] The Rosen Defendants gave notice to plaintiffs' counsel in the Gibo/Lima and Bald Cases of HRS § 667-5 and both Kekauoha decisions prior to the FACs in the Gibo/Lima cases and the Complaint in the Bald Case being served upon the Rosen Defendants. See Rosen Decl., Exhibit C (e-mail string containing correspondence between Plaintiffs' counsel and the Rosen Defendants' counsel between September 17, 2012 and October 10, 2012) ("9-17-12 E-mail String"), previously filed as Gibo Case Dkt. Nos. 112, 112-1, and 112-2, and Lima Case Dkt. Nos. 92, 92-1, and 92-2. *Thus, Plaintiffs were on notice prior to making the decision to serve* the Gibo/Lima FACs and the Complaint in the Bald Case on the Rosen Defendants *that their claims against the Rosen Defendants were contrary to existing statutory and case law, and therefore baseless.*

Thus, the establishment of the first prong of the Rule 11 standard was a foregone conclusion. However, it is requested that the Magistrate Judge clarify the prior decision to incorporate the above authority as the basis for the conclusion as to the first prong of the Rule 11 Standard.

### ii.        Second Prong.

Despite resolving the first prong of the Rule 11 standard in favor of the Rosen Defendants, the Magistrate Judge had concerns regarding the second prong – i.e., whether Plaintiffs' counsel failed to perform a reasonable and competent inquiry – and ultimately denied the Rule 11 Motion based on this prong. Defendants respectfully submit that the Magistrate Judge erred on this point due to not addressing what, if any, inquiry Plaintiffs' counsel actually engage in.

The standard for the second prong as articulated by the Magistrate Judge is as follows:

> … the "reasonable inquiry" part of the frivolousness test "is meant to assist courts in discovering whether ***an attorney***, after conducting ***an objectively reasonable inquiry*** into the facts and law, ***would have found the complaint to be well-founded***." Holgate, 425 F.3d at 677. The court must "avoid using the wisdom of hindsight" and should test the signer's conduct by inquiring ***what was reasonable to believe at the time the pleading was submitted***. Fed. R. Civ. P. 11 advisory committee's note (1983 amendment). As a result, ***what constitutes a reasonable inquiry "may depend on such factors as how much time for investigation was available to the signer***; whether he had to rely on a client for information as to the facts underlying the pleading[]; whether the pleading[] was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar." Id.

\*       \*       \*

… the **_conclusion drawn from the attorney's legal research "must itself be defensible_**," as **_"[e]xtended research alone will not save a claim that is without legal or factual merit_** from the penalty of sanctions." Zaldivar, 780 F.2d at 831.

\*       \*       \*

Under this standard, "**_a suit raising a novel issue of law as to which there is no caselaw to the contrary would not be subject to Rule 11 sanctions_**, even if it was subject to dismissal on the pleadings for failure to state a claim for relief." Strom, 641 F.3d at 1159.

Rule 11 Order, at 12-14 (bold, italics, and underline emphasis added).

Thus, despite the absence of **_any_** showing by Plaintiffs' counsel that they did **_anything_** to satisfy the above standard, the Magistrate Judge found "Plaintiffs' FACs meet this low bar" based on the conclusion that "… unlike other cases in this district where Rule 11 sanctions were awarded, there does not appear to be any case law or other authority that squarely foreclosed Plaintiffs' claims against Rosen Defendants." Rule 11 Order, at 14. Respectfully, the Rosen Defendants assert that the Magistrate Judge's application of the above standard and conclusion is incorrect.

First, evaluating "**_what was reasonable [for the Bickerton/Perkin Firms] to believe at the time the pleading was submitted_**", it was simply not reasonable for the Bickerton/Perkin Firms to believe that statute, case law, fact (contract), or otherwise supported their two claims regarding a quitclaim deed and publishing postponements of sale. Rule 11 Order, at 12 (emphasis added). The Rosen

Defendants gave specific notice to the Bickerton/Perkin Firms of HRS § 667-5 and both <u>Kekauoha</u> decisions prior to the FACs in the Gibo/Lima cases being served upon the Rosen Defendants.  <u>See</u> 9-17-12 E-mail String.[8]

Second, the Bickerton/Perkin Firms had ample time to research and investigate their claims in the Gibo/Lima Cases in response to the Rosen Defendants' Rule 11 Letters and emails putting the Bickerton/Perkin Firms on

---

[8] In said e-mail string, the Rosen Defendants' counsel states to Plaintiffs' counsel the following:

> I do not know how many complaints you have filed against me. However, it is my understanding that some or all allege essentially the same two claims; i.e., defects in postponement notices and the manner of conveyance.

> Postponement notices were not published and are not required by law or otherwise to be published.  See HRS § 667-5 (any properly noticed sale "may be postponed from time to time by public announcement made by the mortgagee or by some person acting on the mortgagee's behalf."); In re Kekauoha-Alisa, 2007 WL 1752266, at *4 (Bkrtcy. D. Haw. Jun. 15, 2007); In re Kekauoha, 674 F.3d 1083, 1088 (9th Cir. (Haw.) 2012) (agreeing with the bankruptcy court's interpretation and dictionary definition of 'public announcement,' which "captures the essence of what the statute requires: Mortgagees shall publicly announce the postponement of a foreclosure sale to a subsequent date."). If you contend otherwise, I would be interested in the basis for and authority supporting your assertion.

> Likewise, warranty deeds, by definition, cannot be provided in the context of a foreclosure because the grantor (i.e., the foreclosing mortgagee) does not have possession (i.e., seisin) of the property being conveyed. See e.g., 21 C.J.S. Covenants § 16; 7 G. Thompson, Real Property § 3178, at 240 (1962 repl.).

notice that their claims were baseless.  Despite this, they proceed recklessly forward in the Five Cases with the knowledge that existing law defeated their claims.

Plaintiffs gave no explanation in the instant cases for their reckless disregard that their claims were baseless, and only later asserted in the Bald Case that they simply did not need to "heed [the] advice of *opposing* counsel…", which they allege was perfectly in their right to do.  See Rosen Decl., Exhibit F (Plaintiffs' Opp. in the Bald Case to the Rosen Defendants' Rule 11 Motion ("Bald Opp. to Rule 11 Mtn")), at 5 (emphasis in original).  Plaintiffs' counsel's position is untenable.  Even if Plaintiffs' counsel did not believe opposing counsel on first blush, Plaintiffs' counsel had a Rule 11 duty to conduct a "reasonable inquiry" as to whether HRS § 667-5 and both Kekauoha decisions actually did contradict their claims as the Rosen Defendants' counsel maintained.

It is beyond dispute that Plaintiffs' counsel had ample time to investigate HRS § 667-5, both Kekauoha decisions, and the Benoist decision, *and research any contradictory authority that might support Plaintiffs' position*, before making the calculated decision to continue prosecuting the FACs against the Rosen Defendant.  Similarly, the other applicable factor – i.e., "whether the pleading[] was based on a plausible view of the law" – also cuts against Plaintiffs because of how clearly the existing statutory and case law on the issue is, and because

Plaintiffs were not able to identify *any* law supporting their baseless assertion. Rule 11 Order, at 13.

Third, the shear heft of Plaintiffs' pleadings and inapplicable authority do not absolve Plaintiffs' counsel of Rule 11 liability. The Magistrate Judge specifically stated: ***"[e]xtended research alone will not save a claim that is without legal or factual merit***." Rule 11 Order, at 13 (emphasis added); compare Bald Opp. to Rule 11 Mtn, at 6 ("THE ATTACHED PAPERS DEMONSTRATE THAT PLAINTIFFS' COUNSEL AT ALL TIMES HAD AN OBJECTIVELY REASONABLE BASIS FOR THEIR CONTINUED ADVOCACY." – Plaintiffs attach 11 of their pleadings that they state are "incorporated herein."). In fact, nothing in those voluminous pleadings does anything to show that Plaintiffs' counsel performed a reasonable investigation and ascertained *anything* to support their assertions.

Fourth, Plaintiffs' argument that they should not be sanctioned because their "theory" was "novel" fails in the face of the plain language of HRS § 667-5, both Kekauoha decisions, and Benoist. This authority establishes that the issue was, in fact, well settled. Thus, the Magistrate Judge's statement that: "***a suit raising a novel issue of law as to which there is*** no caselaw to the contrary ***would not be subject to Rule 11 sanctions***" (Rule 11 Order, at 14 (emphasis added) would not be applicable. Here, the plain language of HRS § 667-5, both Kekauoha decisions,

and <u>Benoist</u> specifically address and are ***directly contrary*** to both of Plaintiffs' claims.

As the Magistrate Judge acknowledged, the second prong of the Rule 11 standard requires litigants to "stop-and-think" before making legal or factual contentions, and ***it also subjects litigants to potential sanctions for "insisting on a position after it is no longer tenable***." Rule 11 Order, at 7 (citing Fed. R. Civ. P. 11 advisory committee's note (1993 amendment)). Here, Plaintiffs were given reason to "stop"; i.e., they were put on notice by the Rosen Defendants of statutory and case law that addressed and refuted their claims. However, it is apparent that Plaintiffs failed to "think", because instead of analyzing the unambiguous controlling law presented by the Rosen Defendants, the Bickerton/Perkin Firms decided to arrogantly and callously charge ahead anyway.

In fact, when Plaintiffs were eventually required to defend their conduct – i.e., in responding to the Rosen Defendants' and lenders' motions to dismiss in the Gibo/Lima and Bald Cases – the plaintiffs in the Gibo/Lima Cases could only point to one case to support their theories, <u>Ulrich v. Security Inv. Co.</u>, 35 Haw. 158 (Haw. 1939), which they later supplemented in the Bald Case with an equally inapplicable decision, <u>Silva v. Lopez</u>, 5 Haw. 262 (Haw. 1884). Considering both decisions, Judge Mollway refused to view either as persuasive. Bald MTD Order,

at 11 ("[n]either of these cases [<u>Ulrich</u> or <u>Silva</u>] is persuasive as authority in the present case.").

In wholly dismissing the relevance of <u>Ulrich</u>, and in granting defendants' motions to dismiss, Judge Mollway noted:

> First, and most significantly, Ulrich involved a chattel mortgage. By contrast, section 667-5 "is inapplicable if the mortgagee is foreclosing as to personal property only." Haw. Rev. Stat. § 667-5(g).
>
> \*       \*       \*
>
> Plaintiffs appear to be urging this court to read into statutory language requirements that the Legislature could have, but clearly did not, expressly adopt. In short, Plaintiffs are asking this court to rewrite section 667-5.

Gibo/Lima MTD Order, at 14-15; <u>see also</u> <u>e.g.</u> Bald MTD Order, at 12 ("[y]et section 667-5 nowhere suggests any principle derived from <u>Ulrich</u> on which Plaintiffs now rely.").

Accordingly, Plaintiffs' baseless claims do not qualify for the 'novel theory' protection from Rule 11 liability because: (1) the plain language of HRS § 667-5, both <u>Kekauoha</u> decisions and <u>Benoist</u> establish that existed law did exist and that it was ***directly contrary*** to both of Plaintiffs' claims; and (2) <u>Ulrich</u> and <u>Silva</u>, which preceded the <u>Kekauoha</u> and <u>Benoist</u> decisions, are wholly inapplicable.

Fifth, Rule 11 and the reasonable inquiry second prong applies to "an ***<u>attorney</u>***," and that ***attorney's*** reasonable ***legal*** inquiry. Rule 11 Order, at 12 (emphasis added). Therefore, here, ***where statutory and caselaw have unequivocally and expressly set forth how a process should be performed, a party***

***or the party's attorney cannot assert a claim to the contrary because the party or the attorney <u>wishes</u> the law were otherwise***.   Attorneys are in a position to understand statutory and caselaw and to understand the proper role of the legal system and courts.   While the Bickerton/Perkin Firms have disregarded both of these – i.e. (1) the law (by disregarding the plain language of HRS § 667-5, both <u>Kekauoha</u> decisions, and <u>Benoist</u>), and (2) the proper role of the courts (by asking the Court to step outside of its proper role into the realm of a legislative body) – the Bickerton/Perkin Firms are held to a higher, "attorney", standard pursuant to Rule 11.   <u>See</u> Rule 11 Order, at 12; Bald MTD Order, at 12 ("Plaintiffs appear to be urging this court to read into statutory language requirements that the Legislature could have, but clearly did not, expressly adopt. In short, Plaintiffs are asking this court to rewrite section 667-5. … this court declines to overstep its proper role by inserting into section 667-5 such additional protections.").

Consequently, while the Magistrate Judge cannot be faulted for respecting our adversarial process and for not wanting to chill meritorious claims from being brought, Rule 11 exists to hold attorneys to a certain standard and to hold them responsible where they abuse the system and the power with which they have been entrusted to harass others where the law is clear and established.   Defendants respectfully submit that the Bickerton/Perkin Firms failed to meet this standard. This resulted in significant hardship and expense to the Rosen Defendants that

continues due to the Bickerton/Perkin Firms' appeals and the New Circuit Court Cases.

## IV.   **CONCLUSION**

Based on the foregoing reasons, the Rosen Defendants respectfully request that the Court reconsider its Rule 11 Order, which denied Defendants' Motion for Rule 11 Sanctions, and grant the Motion.

DATED: Honolulu, Hawaii, August 12, 2013.

/s/David B. Rosen
DAVID B. ROSEN
LAUREN M. AKITAKE
Attorneys for Defendants
THE LAW OFFICE OF DAVID B.
ROSEN, A LAW CORPORATION, and
DAVID B. ROSEN