**BICKERTON LEE DANG & SULLIVAN**
A LIMITED LIABILITY LAW PARTNERSHIP
JAMES J. BICKERTON          3085
STANLEY H. ROEHRIG          664
Topa Financial Center, Fort Street Tower
745 Fort Street, Suite 801
Honolulu, Hawai'i 96813
Telephone: (808) 599-3811
Email: Bickerton@bsds.com; shroehrig@bsds.com

**PERKIN & FARIA LLLC**
JOHN F. PERKIN              1673-0
BRANDEE J.K. FARIA          6970-0
700 Bishop Street, Suite 1111
Honolulu, Hawaii 96813
Tel. (808) 523-2300
Fax. (808) 697-5302

Attorneys for Plaintiffs
JULIE M. SIGWART,
Individually and as Trustee of
the Revocable Living Trust
Dolphin Star Trust
Dated December 10, 2003
and JAMES L. K. DAHLBERG

1ST CIRCUIT COURT
STATE OF HAWAII
FILED
2013 JUL 31 PM 3:50
N. ANAYA
CLERK

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAII

| | |
|---|---|
| JULIE M. SIGWART, Individually and as Trustee of the Revocable Living Trust Dolphin Star Trust Dated December 10, 2003, and JAMES L. K. DAHLBERG,<br><br>Plaintiffs,<br><br>vs.<br><br>THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION; DAVID B. ROSEN and DOE DEFENDANTS 1-50,<br><br>Defendants. | CIVIL NO. 13-1-2097-07 ECN<br>(Other Civil Action)<br><br>**COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS** |



SUMMONS DENIED
LEGAL DOCUMENTS BR.

**EXHIBIT A**



I do hereby certify that this is a full, true, and correct copy of the original on file in this office.

Clerk, Circuit Court, First Circuit

## COMPLAINT

Plaintiffs JULIE M. SIGWART and JAMES L. K. DAHLBERG, for complaint against Defendants THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION; DAVID B. ROSEN; and DOE DEFENDANTS 1-50, (collectively, **"Defendants"**), alleges as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over Defendants and the claims set forth below because this cause is a cause not given by statute to other trial courts and the amount in controversy exceeds the jurisdictional minimum of this Court.

2. Venue is proper in this Circuit pursuant to Hawaii Revised Statutes (**"HRS"**) § 603-36(5) because Defendants reside in this Circuit in this Circuit, and because part of the transactions, events, occurrences or omissions giving rise to the claims asserted herein occurred in this Circuit.

### PARTIES

3. Plaintiff JULIE M. SIGWART (**"Sigwart" or "Plaintiff Sigwart"**) is a resident of and domiciled in the State of California. Plaintiff brings this action individually and as trustee of her revocable living trust, the Dolphin Star Trust Dated December 10, 2003 under which she held title to the property at issue as a personal investment.

4. Plaintiff JAMES L. K. DAHLBERG (**"Dahlberg" or "Plaintiff Dahlberg"**) is a resident of and domiciled in the State of Hawaii.

5. Defendant THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION is, and at all times relevant hereto was, a Hawaii professional corporation, incorporated and with its principal place of business in the City and County of Honolulu, State of Hawaii.

6. Defendant DAVID B. ROSEN is and at all times relevant hereto was a resident of the City and County of Honolulu, State of Hawaii. Defendant DAVID B. ROSEN is the sole officer of THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION ("the Rosen Law Corporation"), a law corporation incorporation incorporated in Hawaii and with its principal place of business in the State of Hawaii, and these two defendants are hereafter referred to as the "ROSEN DEFENDANTS". Each acted as the agent or alter ego of the other and the acts of the Rosen Law Corporation were directed and controlled by DAVID B. ROSEN and DAVID B. ROSEN participated directly in and is liable personally and vicariously for the acts and omissions of the Rosen Law Corporation described herein.

7. Doe Defendants 1-50 are persons, partnerships, associations, companies, corporations, or entities whose names, identities, capacities, activities and/or responsibilities are presently unknown to Plaintiffs or their attorneys, except that Doe Defendants 1-50 were and/or are connected in some manner with the named Defendants and/or were the agents, principals, parents, subsidiaries, servants, employees, representatives, co-venturers, associates, consultants, owners, lessees, lessors, guarantors, assignees, assignors, licensees, and/or licensors of the ROSEN DEFENDANTS, and were or are in some manner presently unknown to Plaintiffs or their attorneys engaged, or involved in the activities alleged herein or responsible for the activities of which Plaintiffs complain, or should be subject to the relief Plaintiffs seek. Plaintiffs pray for leave to certify the true names, identities, capacities, activities and/or responsibilities of Doe Defendants 1-50 when, through further discovery in this case, the same are ascertained. Plaintiffs have made a good faith effort to identify said Doe Defendants prior to filing the Complaint, including interviewing witnesses and reviewing documents and records on

file with the Department of Commerce and Consumer Affairs, the City & County of Honolulu, the Bureau of Conveyances of the State of Hawaii, and the Circuit Court of the First Circuit.

## SUBSTANTIVE ALLEGATIONS

8. This case arises out of the acquisition of Plaintiffs' loss of title to and possession of her properties in an unlawful and improper sale that was improperly advertised by the ROSEN DEFENDANTS in violation of duties under Plaintiffs' mortgages, statutory law, common law and Hawaii's consumer protection statute, HRS § 480-2.

9. The ROSEN DEFENDANTS operate a law business that has conducted a large number of non-judicial foreclosures of the properties of Hawaii consumers over several years including the years 2008 through 2011.

10. The applicable Hawaii law between 2008 and 2011, HRS § 667-7 (2008), plainly stated that such foreclosures must be advertised and the proposed sale date must be "*after the expiration of* four weeks from the date when first advertised."

11. HRS § 1-29 at all relevant times required the exclusion of the first day of any period when calculating the date on which an act must be done.

12. Giving effect to the phrase "*after* the expiration of," this means that the proposed sale date must be a date at least 29 days after the date of the first published advertisement as calculated under HRS § 1-29.

13. Some Hawaii foreclosure law firms other than the ROSEN DEFENDANTS published proposed sale dates that were only 28 days after first publication of their notice in only 2-3% of their foreclosures. However, ROSEN DEFENDANTS published proposed sale dates that were only 28 days after first publication *in more than 70%* of the foreclosures they handled,

thus showing that the ROSEN DEFENDANTS acts described in this complaint were not isolated, but constituted a practice.

14. Similarly, some other Hawaii law firms always published notices of the new sale date when they postponed a non-judicial foreclosure auction, but the ROSEN DEFENDANTS never did this.

15. Hawaii's law, public policy and the obligation to treat consumers fairly and non-deceptively all require those conducting public foreclosure auctions to give wide publicity to the sale and encourage the attendance of bidders.

16. In 1890, when the Hawaii Legislature first adopted the law that later was codified as HRS § 667-7 (2008), the Legislature expressly provided that "the true intent and object" of Hawaii's foreclosure statute "and of any law to provide for foreclosure of mortgages without suit, ought to be to reduce expenses and outlay to the mortgagor, *while giving the widest publicity to the sale of the mortgaged premises*, in order to obtain the greatest possible price." (Emphasis added).

17. Practices which chill the bidding at public auctions of real property by failing to give wide publicity are against public policy and contrary to the mortgagees' legal duties.

18. The ROSEN DEFENDANTS's practices described herein were in violation of their statutory duties as well as common law duties (and common law duties imposed upon them by statute) and were in addition unfair and/or deceptive to consumers within the meaning of HRS § 480-2, thus rendering the auction sale of Plaintiffs' property unlawful, and Plaintiffs have been harmed because they lost title to and possession of her properties in this unlawful sale.

19. The Doe Defendants in manners presently unknown participated in, authorized, directed, acted in concert with or ratified the conduct of the ROSEN DEFENDANTS described

5

herein. The ROSEN DEFENDANTS and the Doe Defendants are hereinafter described collectively herein as "Defendants."

20. Plaintiffs have standing as a person injured by the scheme and acts described herein to challenge the conduct of ROSEN DEFENDANTS, as well as to challenge the acts and conduct of any other person or entity who participated as described in the preceding paragraph in the process of taking title to and possession of the properties of Plaintiffs.

21. Plaintiff Sigwart was the owner of real property located at 210 Humupea Place, Kihei, Maui, Hawaii 96753 (**"Plaintiff Sigwart's Property"**). The property was held by her as trustee of a living trust she created to take title, named the Dolphin Star Trust Dated December 10, 2003, of which she was the sole beneficiary.

22. Plaintiff Sigwart's Property was mortgaged as security for a loan in the principal amount of $353,500. The Mortgage reflecting this indebtedness and security was executed by Plaintiff on or about December 23, 2003, and was thereafter recorded on December 20, 2003 at the Hawaii Bureau of Conveyances ("BOC") by or on behalf of the mortgagee as Document No. 2003-288681.

23. Plaintiff Dahlberg was the owner of real property located at 42 Wainaku Avenue, Apt. 103, Hilo, Hawaii 96720 (**"Plaintiff Dahlberg's Property"**).

24. Plaintiff Dahlberg's Property was mortgaged as security for a loan in the principal amount of $250,000. The Mortgage reflecting this indebtedness and security was executed by Plaintiff on or about May 15, 2006, and was thereafter recorded on May 18, 2006 at the Hawaii Bureau of Conveyances ("BOC") by or on behalf of the mortgagee as Document No. 2006-093741 and T3430111.

25. Both Dahlberg's Mortgage and Sigwart's Mortgage contained a power of sale provision permitting the mortgagee to foreclose non-judicially.

26. The power of sale provision imposed legal duties on the mortgagee and its agents including (a) the duty to strictly comply with its terms and, as is implied in all contracts, (b) an obligation to comply with applicable statutory duties when carrying out the power and (c) duties implied in the power by common law as interpreted and applied by the Hawaii Supreme Court.

27. After Plaintiffs defaulted on the notes secured by their mortgages, ROSEN DEFENDANTS were retained or engaged by the mortgagee to carry out a non-judicial foreclosure. Hawaii law required the mortgagee to use the services of a Hawaii licensed attorney such as the ROSEN DEFENDANTS to carry out the non-judicial foreclosure and required the lawyer to all the acts required by the power of sale in the mortgages, among other things.

28. ROSEN DEFENDANTS elected to proceed with the foreclosures under Part I of HRS Chapter 667 (2008) rather than under Part II, which imposed requirements to publish the date of any postponed sale in a newspaper publication. Although Part I did not have that express requirement, it nevertheless obligated the mortgagee and its agents such as the ROSEN DEFENDANTS to (a) strictly comply with the power of sales terms and (b) adhere to common law duties imposed on holders of a power of sale by Hawaii law for over 100 years, including the duty to give the sale "wide" publicity and obtain the best price.

29. At all relevant times, the ROSEN DEFENDANTS knew that Plaintiff Sigwart's Property had a market value of $600,000, far in excess of the unpaid debt secured by their client's mortgage, which was less than $375,000, and that there was therefore a substantial surplus of the mortgagor which had to be protected by the mortgagee and its agents, the ROSEN DEFENDANTS.

30. Plaintiff Dahlberg's Property also had a market value in excess of the unpaid debt secured by the mortgage, and there was therefore a surplus of the mortgagor which had to be protected by the mortgagee and its agents, the ROSEN DEFENDANTS.

31. In connection with said foreclosure of Plaintiff Sigwart's Property, ROSEN DEFENDANTS caused to be published in the *Maui News* a notice of sale on July 3, 10 and 17, 2009. The notice proposed a sale date of July 31, 2009. This was *within the* four weeks after the first publication, being on the last day of that four week period, and was not "*after the expiration of*" four weeks.

32. In connection with said foreclosure of Plaintiff Dahlberg's Property, ROSEN DEFENDANTS caused to be published in the Hilo Tribune-Herald a notice of sale on August 13, 20 and 27, 2010. The notice proposed a sale date of September 10. This was *within the* four weeks after the first publication, being on the last day of that four week period, and was not "*after the expiration of*" four weeks.

33. The ROSEN DEFENDANTS' dates of proposed auction sales for both Plaintiffs were only 28 days after the first publication of their notices and hence were both one day before any proposed sale was permitted to be held under HRS § 667-7 (2008).

34. Hawaii law as expressed by the Hawaii Supreme Court holds that noticing an auction date one day earlier than permitted by the power of sale is prohibited, violates the power of sale and renders the sale date unlawful. The subsequent sales, having been initially proposed for an improper date and no new date having been published, was similarly unlawful and the ROSEN DEFENDANTS' acts were therefore a substantial factor in causing Plaintiffs to lose possession and title to their Properties in a manner contrary to law.

35. By virtue of the foregoing, no lawful sale date was ever published for either Plaintiff Sigwart's Property or Plaintiff Dahlberg's Property.

36. At all relevant times, Plaintiffs were consumers within the meaning of HRS Chapter 480 for the following reasons: (a) Plaintiffs are each a natural person who committed money in an investment by investing borrowed money in real property. Each Plaintiff borrowed the money to make that investment from a financial institution in the trade and business of lending money for purposes of personal investment; (b) Through a real property mortgage either granted or assigned to a client of ROSEN DEFENDANTS in the course of that client's trade or business, each Plaintiff pledged the property in which he or she was investing as security for the loan he or she was using to make the investment; (c) Plaintiffs made payments on her loan, which payments included both principal and interest payments, as well as payments for property taxes and maintenance as required by the mortgage loan covenants, as the means by which Plaintiffs continued to invest in their respective Properties. Defendants thereafter either represented, aided, or assisted the mortgagee or assignee of the mortgage, in the course of its trade or business, in collecting on the loan once it became delinquent, including representing, aiding, or assisting the mortgagee or assignee in enforcing or purporting to enforce and foreclose the mortgage, and to acquire or sell the Property in which each Plaintiff had invested; (d) By virtue of the foregoing, Plaintiffs are "consumers" within the meaning of H.R.S. § 480-1 with respect to the loan, the mortgage, and the efforts by Defendants to collect on the loan and to foreclose the mortgage or otherwise to sell and/or acquire the Properties in which each Plaintiff had invested.

37. The conduct of the Defendants described above occurred "in the conduct of any trade or commerce" because, among other things, the transactions involved the sales of real

9

property at public auctions conducted by said Defendants on terms of sale advertised by Defendants to the general public: (a) as part of Defendants' own business of representing foreclosing mortgagees; and (b) as part of Defendants' clients' business in carrying out terms of mortgage contracts with consumers.

38. By virtue of the foregoing facts, the ROSEN DEFENDANTS and the Doe Defendants are liable to Plaintiffs for unfair and deceptive acts and practices under HRS Chapter 480.

39. The wrongful conduct of the Defendants as aforesaid has caused Plaintiffs to lose title to and possession of their respective Properties unlawfully and thereby damaged them through a loss of their equity in the Property of each of them and the lost use of that Property.

40. The sale of Plaintiff Sigwart's Property did not take place on July 31, 2009 as proposed in the published notice. This was a violation of the power of sale which required the mortgagee (and hence the attorney acting on its behalf) to "sell the Property at the time and place and under the terms specified in the notice of sale." Instead, the ROSEN DEFENDANTS caused Plaintiff Sigwart's Property to be sold on a date that was never published in any publication prior to its occurrence.

41. The sale of Plaintiff Dahlberg's Property did not take place on September 10, 2010 as proposed in the published notice. This was a violation of the power of sale which required the mortgagee (and hence the attorney acting on its behalf) to "sell the Property at the time and place and under the terms specified in the notice of sale." Instead, the ROSEN DEFENDANTS caused Plaintiff Dahlberg's Property to be sold on a date that was never published in any publication prior to its occurrence.

42. In both Plaintiffs' case there was substantial equity in the property, yet ROSEN DEFENDANTS did not impose an upset price on the sale or take other reasonable steps to safeguard said surplus for the benefit of the mortgagor. This was contrary to Hawaii law and public policy.

43. ROSEN DEFENDANTS contend that a "term" in the published notice allowed them to postpone the auctions, but the power of sale in the Mortgages only permits the mortgagee and its agents to set the terms *of sale* in the notice, and the claimed right to postpone an auction is not a "term" of sale as the power of sale uses those words. Moreover, any right to sell on terms specified in the notice did not override or supersede the separate and distinct obligation to sell *at a time* stated in the published notice.

44. Regardless of the mortgagee's right to set the terms of sale and/or postpone the sale date, the power of sale provision in Paragraph 22 of the mortgages on the Properties required the Properties either to be sold on the advertised sale date or, at a minimum, to be sold on a date that was advertised by publication.

45. The language of Paragraph 22 would lead an ordinary consumer to believe that his or her property would only be sold on an auction date that was published and consumers' reasonable expectation from Paragraph 22 was that the Property would not be sold without the general public being made aware of the sale date through a publication. Any contrary action by Defendants was therefore unfair and/or deceptive within the meaning of HRS § 480-2.

46. Exercising the claimed right or power to postpone the auction without publishing the new sale date, ROSEN DEFENDANTS caused the auction of Plaintiff Sigwart's Property to be postponed to August 28, 2009. In an Affidavit of Foreclosure filed at the BOC on or about September 25, 2009 and recorded as Document No. 2009-148006 ("the Affidavit of Foreclosure

re Sigwart Property"), the mortgagee reported that the postponement from July 31, 2009 to August 28, 2009 had been done "by mesne postponements." Specifically, the Affidavit of Foreclosure re Sigwart Property stated that: "A postponement was cried on July 31, 2009, original sale. Sale was postponed to August 28, 2009 by mesne postponements."

47. On information and belief, the reference to "mesne postponements" refers to one or more intervening proposed sale dates and postponements *between* July 31 and August 28, 2009 inasmuch as "mesne" means "intermediate" or "intervening".

48. Exercising the claimed right or power to postpone the auction without publishing the new sale date, ROSEN DEFENDANTS caused the auction of Plaintiff Dahlberg's Property to be postponed from September 10, 2010 to January 7, 2011. In an Affidavit of Foreclosure filed at the BOC on or about February 4, 2011 and recorded as Document No. 2011-021204 ("the Affidavit of Foreclosure re Dahlberg Property"), the mortgagee reported that the postponement from July 31, 2009 to August 28, 2009 had been done "by mesne postponements." Specifically, the Affidavit of Foreclosure re Dahlberg Property stated that: "A postponement was cried on 9/10/2010, original sale. Sale was postponed to 1/7/2011 by mesne postponements."

49. HRS § 667-5 (2008) in effect at the time of the above-described acts only permitted the postponement of sale dates that had already been published three times in three successive weeks as required by Subsection 667-5(a) inasmuch as the statute only permitted postponement of a sale "of which notice has been given as aforesaid." Moreover, the public policy under the law permitting oral announcement of a postponement from the old time to a new time only required sales to take place as soon as possible after the published date so as not to lose the attention gained by the original publication.

12

50. Regardless of whether or not the ROSEN DEFENDANTS made more than one postponement of the Sigwart sale originally proposed for July 31, 2009 or the Dahlberg sale originally proposed for September 10, 2010, they failed to publish any notices of the new sale dates and no such notices were published by anyone else.

51. Following the foregoing postponement without publication of the sale of Sigwart's Property, only a single bidder, U.S. Bank, N.A., the claimed holder of the note secured by the Mortgage, bid at the August 28, 2009 auction. As a result, U.S. Bank was the winning bidder with a bid of $383,712.13. This sum approximately reflected the indebtedness claimed by U.S. Bank but was substantially below the market value of the Plaintiff Sigwart's Property which Defendants knew to be approximately $600,000 in 2009.

52. Following the foregoing postponement without publication of the sale of Dahlberg's Property, only a single bidder, Wells Fargo Bank, N.A., the claimed holder of the note secured by the Mortgage, bid at the January 7, 2011 auction. As a result, Wells Fargo was the winning bidder with a bid of $225,000. This sum was substantially below the market value of the Plaintiff Dahlberg's Property.

53. The aforesaid conduct by Defendants violated Chapter 667 because it breached the provisions of the power of sale in the Mortgages and the duty implied therein to give wide publicity for the sale and seek the best price.

54. The conduct of the ROSEN DEFENDANTS as aforesaid chilled the bidding at the public auction of Plaintiffs' Properties, thereby violating Hawaii's public policy.

55. The conduct of Defendants in connection with the failure to publish the actual sale dates of the Plaintiffs' Properties took place "in the conduct of any trade or commerce" because, among other things, the transactions involved the sales of real property at public

auctions conducted by said Defendants on terms of sale advertised by Defendants to the general public: (a) as part of Defendants' own business of representing foreclosing mortgagees; and (b) as part of Defendants' clients' business in carrying out terms of mortgage contracts.

56. By virtue of the foregoing facts, Defendants are liable to Plaintiff for unfair and deceptive acts and practices under HRS Chapter 480.

57. The wrongful conduct of Defendants as aforesaid has caused Plaintiffs to lose title to and possession of their respective Properties unlawfully and thereby damaged them through a loss of their equity in their respective Properties and the lost use of said Properties.

58. Plaintiffs are "persons" within the meaning of HRS § 480-1.

59. The conduct of ROSEN DEFENDANTS described herein was wrongful and constituted unfair methods of competition within the meaning of HRS. § 480-2 in at least the following respects: (a)The "nature of the competition" was competition among buyers or prospective buyers of real property, including both prospective auction bidders and foreclosing mortgagees, who sought to acquire properties at non-judicial foreclosure auctions at lower prices and resell them at higher prices. Defendants aided and assisted foreclosing mortgagees in gaining an unfair competitive advantage over other persons or entities who sought to acquire properties in foreclosure, by "chilling" bidding through their failure to give the full notice period required after the first advertisement and by postponing sales without giving adequate publicity of the new date; and (b) the "nature of the competition" was also competition between (1) ROSEN DEFENDANTS and their affiliates or co-venturers in the business of servicing mortgagees and (2) other law firms, agents or intermediaries that also represented and serviced foreclosing mortgagees in non-judicial foreclosures of Hawaii mortgages, competing for the business of conducting foreclosures on behalf of mortgagees. ROSEN DEFENDANTS gained an unfair

competitive advantage over such other firms by engaging in unlawful foreclosure practices that allowed them to increase profits and lower their prices by shortening the overall time of the foreclosure process through not observing the 29 days requirement and not publishing notices of postponed auctions' rescheduled dates and times.

60. The practices that allowed ROSEN DEFENDANTS to gain an unfair competitive advantage also chilled bidding at foreclosure auctions to the substantial injury of Plaintiffs and other consumers.

61. Following the August 28, 2009 auction of Plaintiff Sigwart's property, U.S. Bank received a mortgagee's quitclaim deed from the mortgagee. The deed was executed on or about October 15, 2009 and recorded at the BOC on or about October 23, 2009.

62. On or about September 25, 2009 the mortgagee caused an Affidavit of Foreclosure with respect to Plaintiff's Property to be filed at the BOC purporting to describe the acts taken by the mortgagee, though its agents the ROSEN DEFENDANTS, to effect the foreclosure. The Affidavit was recorded as Document No. 2009-148006.

63. Following the January 7, 2011 auction of Plaintiff Dahlberg's property, Wells Fargo gave a "Grant Deed Pursuant to Power of Sale" to Federal Home Loan Mortgage Corporation who, on information and belief was the nominee of Wells Fargo as the successful bidder. The deed was executed on or about September 26, 2011 and recorded at the BOC on or about October 21, 2011.

64. On or about February 4, 2011 the mortgagee caused an Affidavit of Foreclosure with respect to Plaintiff Dahlberg's Property to be filed at the BOC purporting to describe the acts taken by the mortgagee, though its agents the ROSEN DEFENDANTS, to effect the foreclosure. The Affidavit was recorded as Document No. 2011-021204.

65. As a direct and proximate result of the wrongful acts described above, Plaintiffs have been actually harmed and injured in that they lost title, possession and occupancy of their respective Properties. Said Properties were subjected unlawfully to sale through the non-judicial foreclosure process and said sales occurred at below-market prices.

66. As a direct and proximate result of the wrongful acts described above, Plaintiffs sustained the following damages: (1) lost the net equity in their properties or otherwise had their net worth decreased or worsened by the sale of their Properties in a distress sale system, as measured by the difference between the fair market value of the Properties and the price at which they were was wrongfully auctioned by Defendants and (2) lost the use of their Properties from and after the date they lost possession by virtue of the foreclosure sales up until the date of judgment, which lost use should be measured by the fair market rental value for the period of lost use. The combined sum of these damages is presently unknown, but exceeds any minimum jurisdictional limit of this Court and the minimum sum required for a jury trial.

67. By virtue of the foregoing, ROSEN DEFENDANTS and the Doe Defendants are liable to Plaintiffs. Plaintiffs are entitled under any and all applicable tort or recovery theories to recover their above-described economic losses sustained as a result of the above-described wrongful and/or unlawful conduct in amounts to be proved at trial.

68. The conduct of Defendants described above was knowing, willful, wanton, reckless and /or grossly negligent. It further demonstrates a conscious disregard for the rights of others. Plaintiffs are therefore entitled to an award of punitive damages in amounts to be proved at trial that are sufficient to adequately punish Defendants given their financial condition and to deter them from such conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against all Defendants, jointly and severally, as follows:

(1) For damages in favor of each Plaintiff and against the Defendants in amounts to be determined at trial;

(2) For reimbursement of costs and expenses, including reasonable provision for attorneys' fees in accordance with HRS Chapter 480;

(3) For prejudgment interest;

(4) For treble damages as provided by law;

(5) For punitive damages;

(6) For such further and additional relief as the Court deems appropriate and just.

DATED:   Honolulu, Hawai'i, July 31, 2013.

JAMES J. BICKERTON
STANLEY H. ROEHRIG
JOHN F. PERKIN
BRANDEE J.K. FARIA

Attorneys for Plaintiffs
JULIE M SIGWART,
Individually and as Trustee of
the Revocable Living Trust
Dolphin Star Trust Dated
December 10, 2003 and
JAMES L. K. DAHLBERG

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| JULIE M. SIGWART, Individually and as Trustee of the Revocable Living Trust Dolphin Star Trust Dated December 10, 2003 and JAMES L. K. DAHLBERG,<br><br>Plaintiffs,<br><br>vs.<br><br>THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION; DAVID B. ROSEN and DOE DEFENDANTS 1-50,<br><br>Defendants. | CIVIL NO.<br>(Other Civil Action)<br><br>DEMAND FOR JURY TRIAL |

## DEMAND FOR JURY TRIAL

Plaintiffs JULIE M. SIGWART, Individually and as Trustee of the Revocable Living Trust Dolphin Star Trust Dated December 10, 2003, and JAMES L. K. DAHLBERG hereby demand a trial by jury as to all issues so triable in the above-entitled cause.

DATED:   Honolulu, Hawai'i, July 31, 2013.

JAMES J. BICKERTON
STANLEY H. ROEHRIG
JOHN F. PERKIN
BRANDEE J.K. FARIA

Attorneys for Plaintiffs
JULIE M SIGWART, Individually and as Trustee of the Revocable Living Trust Dolphin Star Trust Dated December 10, 2003 and JAMES L. K. DAHLBERG

| STATE OF HAWAI'I<br>CIRCUIT COURT<br>OF THE FIRST CIRCUIT | SUMMONS<br>TO ANSWER CIVIL COMPLAINT | CASE NUMBER |
|---|---|---|

| PLAINTIFF, | VS. | DEFENDANT. |
|---|---|---|
| JULIE M. SIGWART, individually and on behalf of all others similarly situated and JAMES L. K. DAHLBERG | | THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION; DAVID B. ROSEN, and DOE DEFENDANTS 1-50 |

PLAINTIFF'S ADDRESS (NAME, ADDRESS, TEL. NO.)

JULIE M. SIGWART and JAMES L.K. DAHLBERG
c/o JAMES J. BICKERTON
Bickerton Lee Dang & Sullivan
745 Fort Street, Suite 801
Honolulu, Hawaii 96813
(808) 599-3811

### TO THE ABOVE-NAMED DEFENDANT(S)

You are hereby summoned and required to file with the court and serve upon

Bickerton Lee Dang & Sullivan, 745 Fort Street, Suite 801, Honolulu, Hawaii 96813
                                                                                                                                              ,
plaintiff's attorney, whose address is stated above, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 P.M. AND 6:00 A.M. ON PREMISES NOT OPEN TO THE GENERAL PUBLIC, UNLESS A JUDGE OF THE ABOVE-ENTITLED COURT PERMITS, IN WRITING ON THIS SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.**

**A FAILURE TO OBEY THIS SUMMONS MAY RESULT IN AN ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DISOBEYING PERSON OR PARTY.**

| DATE ISSUED | CLERK | SUMMONS DENIED<br>LEGAL DOCUMENTS BR. | |
|---|---|---|---|
| I do hereby certify that this is full, true, and correct copy of the original on file in this office | | Circuit Court Clerk | |

In accordance with the Americans with Disabilities Act and other applicable state and federal laws, if you require a reasonable accommodation for a disability, please contact the ADA Coordinator at the First Circuit Court Administration Office at PHONE NO. 539-4333, FAX 539-4322, or TTY 539-4853, at least ten (10) working days prior to your hearing or appointment date.

Reprographics (07/11)   RevaComm 508 Certified                                                                SUMMONS TO ANSWER CIVIL COMPLAINT 1C-P-787