**BICKERTON LEE DANG & SULLIVAN**
A LIMITED LIABILITY LAW PARTNERSHIP

JAMES J. BICKERTON          3085
STANLEY H. ROEHRIG          664
Topa Financial Center, Fort Street Tower
745 Fort Street, Suite 801
Honolulu, Hawai'i 96813
Telephone: (808) 599-3811
Email: bickerton@bsds.com; shroehrig@bsds.com

Attorneys for Plaintiff
RUSSELL L. HUNGATE

1ST CIRCUIT COURT
STATE OF HAWAII
FILED

2013 AUG -6 PM 2: 05

S. TAMANAHA
CLERK

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAI'I

| | |
|---|---|
| RUSSELL L. HUNGATE,<br><br>Plaintiff,<br><br>vs.<br><br>THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION; DAVID B. ROSEN; DEUTSCHE BANK NATIONAL TRUST COMPANY and DOE DEFENDANTS 1-50,<br><br>Defendants. | CIVIL NO. **13-1-2146-08 R A N**<br>(Other Civil Action)<br><br>**COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS** |

### COMPLAINT

Plaintiff RUSSELL L. HUNGATE, for complaint against Defendants THE LAW

OFFICE OF DAVID B. ROSEN, A LAW CORPORATION; DAVID B. ROSEN; DEUTSCHE

BANK NATIONAL TRUST COMPANY and DOE DEFENDANTS 1-50, (collectively,

**"Defendants"**), alleges as follows:

I do hereby certify that this is a full, true, and correct copy of the original on file in this office.

Clerk, Circuit Court, First Circuit

# EXHIBIT B

## JURISDICTION AND VENUE

1.    The Court has jurisdiction over Defendants and the claims set forth below because this cause is a cause not given by statute to other trial courts and the amount in controversy exceeds the jurisdictional minimum of this Court.

2.    Venue is proper in this Circuit pursuant to Hawai'i Revised Statutes (**"HRS"**) § 603-36(5) because a substantial part of the transactions, events, occurrences or omissions giving rise to the claims asserted herein occurred in this Circuit and/or a majority of the Defendants reside in this Circuit.

## PARTIES

3.    RUSSELL L. HUNGATE (**"Hungate"** or **"Plaintiff Hungate"**) is a resident of and domiciled in the State of California.

4.    Defendant THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION is, and at all times relevant hereto was, a Hawai'i professional corporation, incorporated and with its principal place of business in the City and County of Honolulu, State of Hawai'i.

5.    Defendant DAVID B. ROSEN is and at all times relevant hereto was a resident of the City and County of Honolulu, State of Hawai'i domiciled in the State of Hawai'i. Defendant DAVID B. ROSEN is the sole officer of THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION ("the Rosen Law Corporation"), a law corporation incorporated in Hawai'i and with its principal place of business in the State of Hawai'i, and these two Defendants are hereafter referred to collectively as the "ROSEN DEFENDANTS". Each acted as the agent or alter ego of the other and the acts of the Rosen Law Corporation were directed and controlled by DAVID B. ROSEN and DAVID B. ROSEN participated directly in and is liable personally and vicariously for the acts and omissions of the Rosen Law Corporation described herein.

2

6.     At all material times, Defendant DEUTSCHE BANK NATIONAL TRUST

COMPANY ("DEUTSCHE") is and was a national banking association organized under the

laws of the United States of America. DEUTSCHE's main office and principal place of business

is purported to be located at 300 South Grand Avenue, Suite 3950, Los Angeles, California

90071. DEUTSCHE is a citizen of California. DEUTSCHE is sued (a) in its individual capacity

and (b) in any and all other capacities in which it acted wrongfully with respect to Plaintiff.

7.     Doe Defendants 1-50 are persons, partnerships, associations, companies,

corporations, or entities whose names, identities, capacities, activities and/or responsibilities are

presently unknown to Plaintiff or his attorneys, except that Doe Defendants 1-50 were and/or are

connected in some manner with the named Defendants and/or were the agents, principals,

parents, subsidiaries, servants, employees, representatives, co-venturers, associates, consultants,

owners, lessees, lessors, guarantors, assignees, assignors, licensees, and/or licensors of the

named Defendants, and were or are in some manner presently unknown to Plaintiff or his

attorneys engaged, or involved in the activities alleged herein or responsible for the activities of

which Plaintiff complains, or should be subject to the relief Plaintiff seeks. Plaintiff prays for

leave to certify the true names, identities, capacities, activities and/or responsibilities of Doe

Defendants 1-50 when, through further discovery in this case, the same are ascertained. Plaintiff

have made a good faith effort to identify said Doe Defendants prior to filing the Complaint,

including interviewing witnesses and reviewing documents and records on file with the

Department of Commerce and Consumer Affairs, the City & County of Honolulu, the Bureau of

Conveyances of the State of Hawai'i, and the Circuit Court of the First Circuit.

3

## SUBSTANTIVE ALLEGATIONS

8.      This case arises out of Plaintiff's loss of title to and possession of his property in an unlawful and improper sale that was improperly scheduled and advertised by the ROSEN DEFENDANTS acting directly or indirectly on behalf of DEUTSCHE in violation of duties owed by all Defendants under Plaintiff's mortgage, statutory law, common law and Hawai'i's consumer protection statute, HRS § 480-2.

9.      The ROSEN DEFENDANTS operate a law business that has conducted a large number of non-judicial foreclosures of the properties of Hawai'i consumers over several years including the years 2008 through 2011.

10.      DEUTSCHE holds or purports to hold notes and mortgages and, through one or more agents, used the services of the ROSEN DEFENDANTS to conduct non-judicial foreclosures of property in the State of Hawai'i between 2008 and 2011.  All of the acts of the ROSEN DEFENDANTS alleged herein were done as the agents of or otherwise on behalf of or for the benefit of DEUTSCHE and DEUTSCHE is vicariously liable therefor.

11.      Plaintiff Hungate was the owner of real property located at Lot 42, Kuaaina Street, Kalaheo, Kauai 96741 (**"Plaintiff Hungate's Property"**).

12.      Plaintiff Hungate's Property was mortgaged as security for a loan in the principal amount of $324,090.  The Mortgage reflecting this indebtedness and security was executed by Plaintiff on or about February 10, 2007, and was thereafter recorded on February 16, 2007 at the Hawai'i Bureau of Conveyances ("BOC") by or on behalf of the original mortgagee MERS, Inc. as nominee of IndyMac Bank, F.S.B., the lender, as Document No. 2007-030375.

13.      IndyMac Bank FSB assigned its interest in Plaintiff's note and mortgage to IndyMac ASB Inc., a subsidiary of IndyMac Bank FSB, on or about March 1, 2007.  Deutsche

has represented to third persons that IndyMac ASB, Inc. in turn purported to assign the note and

mortgage to DEUTSCHE in March 2007. If those statements were true, then DEUTSCHE by

virtue of its ownership of the note became the beneficiary of the mortgage and was entitled to

have the mortgagee, being whoever held the mortgage securing said note, foreclose on its behalf

in the event of default on the note by Hungate. Whatever interest in the note and mortgage

DEUTSCHE actually had, it purported to acquire it from IndyMac ASB, Inc, not from IndyMac

Bank FSB, which had nothing left to assign after March 1, 2007 when it assigned its interest

therein to IndyMac ASB, Inc.

14.    IndyMac Bank FSB and its subsidiaries encountered financial difficulties in 2008

and all of their assets were taken over by regulators and/or sold or conveyed and the companies

closed or merged into other companies by early 2009. Nevertheless, on November 24, 2008, a

person purporting to sign for MERS, Inc. (but possibly employed by a Doe Defendant) "solely as

nominee of IndyMac Bank FSB" assigned the mortgage to "IndyMac Bank FSB" ("the

Assignment"), even though at that point the mortgage was owned by either IndyMac ASB, Inc.

or, possibly, DEUTSCHE. On January 14, 2009 a person in Texas purporting to act for IndyMac

Bank FSB but possibly employed by a Doe Defendant executed a Notice of Mortgagee's

Intention to Foreclose Under Power of Sale" ("the Foreclosure Notice") in which he described

IndyMac FSB as "the mortgagee" but did not mention that DEUTSCHE was the holder of the

underlying note.

15.    The Assignment and the Foreclosure Notice were both recorded at the BOC on

the same date, March 16, 2009. At all relevant times, the persons and entities purporting to act

either as or for "the mortgagee" were in reality acting on behalf of DEUTSCHE as holder of the

note and DEUTSCHE is either directly or vicariously liable for all of their acts and omissions in conducting the non-judicial foreclosure of Plaintiff Hungate's Property.

16.     Plaintiff's Mortgage contained a power of sale provision permitting the mortgagee to foreclose non-judicially.

17.     The power of sale provision imposed legal duties on the mortgagee and its agents including (a) the duty to strictly comply with its terms and, as is implied in all contracts, (b) an obligation to comply with applicable statutory duties when carrying out the power and (c) duties implied in the power by common law as interpreted and applied by the Hawaiʻi Supreme Court. DEUTSCHE, as the party controlling and directing the acts of the putative mortgagee, and the ROSEN DEFENDANTS, as the putative mortgagee's attorneys, had all of the aforesaid duties.

18.     The applicable Hawaiʻi law between 2008 and 2011, HRS § 667-7 (2008), plainly stated that such foreclosures must be advertised and the proposed sale date must be "*after the expiration of* four weeks from the date when first advertised."

19.     HRS § 1-29 at all relevant times required the exclusion of the first day of any period when calculating the date on which an act must be done.

20.     Giving effect to the phrase "*after* the expiration of," this means that the proposed sale date must be a date at least 29 days after the date of the first published advertisement as calculated under HRS § 1-29.

21.     Some Hawaiʻi foreclosure law firms other than the ROSEN DEFENDANTS published proposed sale dates that were only 28 days after first publication of their notice in only 2-3% of their foreclosures.  However, ROSEN DEFENDANTS published proposed sale dates that were only 28 days after first publication *in more than 70%* of the foreclosures they handled,

6

thus showing that the ROSEN DEFENDANTS acts described in this complaint were not isolated, but constituted a practice.

22.     Similarly, some other Hawai'i law firms always published notices of the new sale date when they postponed a non-judicial foreclosure auction, but the ROSEN DEFENDANTS never did this.

23.     Hawai'i's law, public policy and the obligation to treat consumers fairly and non-deceptively all require those conducting public foreclosure auctions to give wide publicity to the sale and encourage the attendance of bidders.

24.     In 1890, when the Hawai'i Legislature first adopted the law that later was codified as HRS § 667-7 (2008), the Legislature expressly provided that "the true intent and object" of Hawai'i's foreclosure statute "and of any law to provide for foreclosure of mortgages without suit, ought to be to reduce expenses and outlay to the mortgagor, *while giving the widest publicity to the sale of the mortgaged premises*, in order to obtain the greatest possible price." (Emphasis added).

25.     Practices that chill the bidding at public auctions of real property by failing to give wide publicity are against public policy and contrary to the mortgagees' legal duties.

26.     The ROSEN DEFENDANTS's practices described herein were in violation of their statutory duties as well as common law duties (and common law duties imposed upon them by statute) and were in addition unfair and/or deceptive to consumers within the meaning of HRS § 480-2, thus rendering the auction sale of Plaintiff's property unlawful, and Plaintiff has been harmed because he lost title to and possession of his properties in this unlawful sale.

27.     The Doe Defendants in manners presently unknown participated in, authorized, directed, acted in concert with or ratified the conduct of the ROSEN DEFENDANTS and

DEUTSCHE described herein. The ROSEN DEFENDANTS, DEUTSCHE and the Doe Defendants are hereinafter described collectively herein as "Defendants."

28.     Plaintiff has standing as a person injured by the scheme and acts described herein to challenge the conduct of ROSEN DEFENDANTS and DEUTSCHE, as well as to challenge the acts and conduct of any other person or entity who participated as described in the preceding paragraph in the process of taking title to and possession of the property of Plaintiff.

29.     After Plaintiff defaulted on the notes secured by his Mortgage, ROSEN DEFENDANTS were retained or engaged by or on behalf of DEUTSCHE, acting in the name of the no longer functioning IndyMac Bank FSB as "mortgagee," to carry out a non-judicial foreclosure.

30.     Hawai'i law required the putative mortgagee to use the services of a Hawai'i licensed attorney such as the ROSEN DEFENDANTS to carry out the non-judicial foreclosure and required the lawyer to "do all acts as are authorized or required by the power of sale contained in the mortgage," among other things.

31.     ROSEN DEFENDANTS elected to proceed with the foreclosures under Part I of HRS Chapter 667 (2008) rather than under Part II, the latter of which imposed requirements to publish the date of any postponed sale in a newspaper publication. Although Part I did not have that express requirement, it nevertheless obligated DEUTSCHE and its agents such as the ROSEN DEFENDANTS to (a) strictly comply with the power of sales terms and (b) adhere to common law duties imposed on holders of a power of sale by Hawai'i law for over 100 years, including the duty to give the sale "wide" publicity and obtain the best price. As detailed further below, Defendants breached this duty.

8

32. Plaintiff Hungate's Property had a market value in excess of the unpaid debt secured by the mortgage, and there was therefore a surplus of the mortgagor which had to be protected by DEUTSCHE and its agents, the ROSEN DEFENDANTS.

33. In connection with said foreclosure of Plaintiff Hungate's Property, ROSEN DEFENDANTS caused to be published in the Kauai publication "*The Garden Island*" a notice of sale on March 20, 27 and April 3, 2009. The notice proposed a sale date of April 17, 2009. This proposed sale date was *within the* four weeks after the first publication, being on the last day of that four week period, and was not "*after the expiration of*" four weeks.

34. The ROSEN DEFENDANTS' dates of proposed auction sales for both Plaintiffs were only 28 days after the first publication of their notices and hence were both one day before any proposed sale was permitted to be held under HRS § 667-7 (2008). HRS Section 667-5 (2008) required DEUTSCHE and the ROSEN DEFENDANTS to follow the duties imposed by the power of sale, and the mortgage in turn required them to follow their duties imposed by statute, such that any violation of the power of sale was a violation of statute and any violation of the statute was a violation of the power of sale.

35. Hawai'i law as expressed by the Hawai'i Supreme Court holds that noticing an auction date one day earlier than permitted violates the power of sale and renders the sale date unlawful. The subsequent sale of Plaintiff Hungate's Property at a later date than initially proposed, having been initially proposed for an improper date and the new date not having been published, was similarly unlawful and DEUTSCHE's and the ROSEN DEFENDANTS' acts were therefore a substantial factor in causing Plaintiff to lose possession and title to his Property in a manner contrary to law.

36.     By virtue of the foregoing, no lawful sale date was ever published for Plaintiff Hungate's Property.

37.     At all relevant times, Plaintiff was a consumer within the meaning of HRS Chapter 480 for the following reasons: (a) Plaintiff is a natural person who committed money in an investment by investing borrowed money in real property. Plaintiff borrowed the money to make that investment from a financial institution in the trade and business of lending money for purposes of personal investment; (b) Through a real property mortgage either granted to, assigned to or being enforced on behalf of DEUTSCHE by the ROSEN DEFENDANTS in the course of DEUTSCHE'S and the ROSEN DEFENDANTS' trade or business, Plaintiff pledged the property in which he was investing as security for the loan he was using to make the investment; (c) Plaintiff made payments on his loan, which payments included both principal and interest payments, as well as payments for property taxes and maintenance as required by the mortgage loan covenants, as the means by which Plaintiff continued to invest in his Property. The ROSEN DEFENDANTS thereafter either represented, aided, or assisted DEUTSCHE in the course of its trade or business, in collecting on the loan once it became delinquent, including representing, aiding, or assisting DEUTSCHE in enforcing or purporting to enforce and foreclose the mortgage, and acquiring or selling the Property in which Plaintiff Hungate had invested; (d) By virtue of the foregoing, Plaintiff is a "consumer" within the meaning of H.R.S. § 480-1 with respect to the loan, the mortgage, and the efforts by Defendants to collect on the loan and to foreclose the mortgage or otherwise to sell and/or acquire the Property in which Plaintiff had invested.

38.     The conduct of the Defendants described above occurred "in the conduct of any trade or commerce" because, among other things, the transactions involved the sales of real

10

property at public auctions conducted by said Defendants on terms of sale advertised by

Defendants to the general public: (a) as part of Defendants' own business of representing

foreclosing mortgagees; and (b) as part of DEUTSCHE's business in carrying out terms of

mortgage contracts with consumers.

39.     By virtue of the foregoing facts, the ROSEN DEFENDANTS, DEUTSCHE and

the Doe Defendants are liable to Plaintiffs for unfair and deceptive acts and practices under HRS

Chapter 480.

40.     The wrongful conduct of the Defendants as aforesaid has caused Plaintiff to lose

title to and possession of his Property unlawfully and thereby damaged him through a loss of his

equity in the Property and the lost use of that Property.

41.     The sale of Plaintiff Hungate's Property did not take place on April 17, 2009 as

proposed in the published notice. This was a violation of the power of sale which required the

mortgagee (and hence the attorney acting on its behalf) to "sell the Property at the time and place

and under the terms specified in the notice of sale." Instead, the ROSEN DEFENDANTS,

ostensibly acting directly for "IndyMac Bank FSB" but in reality acting for DEUTSCHE, caused

Plaintiff Hungate's Property to be sold on a date that was never published in any publication

prior to its occurrence.

42.     There was substantial equity in Plaintiff Hungate's Property, yet ROSEN

DEFENDANTS and DEUTSCHE did not impose an upset price on the sale or take other

reasonable steps to safeguard said surplus for the benefit of the mortgagor. This was contrary to

Hawai'i law and public policy.

43.     ROSEN DEFENDANTS contend that a "term" in the published notice allowed

them to postpone the auctions, but the power of sale in the Mortgage only permits the mortgagee

11

and its agents to set the terms *of sale* in the notice, and the claimed right to postpone an auction

is not a "term" of sale as the power of sale uses those words. Moreover, any right to sell on

terms specified in the notice did not override or supersede the separate and distinct obligation to

sell *at a time* stated in the published notice.

44.     Regardless of the mortgagee's right to set the terms of sale and/or postpone the

sale date, the power of sale provision in Paragraph 22 of the mortgage on Plaintiff Hungate's

Property required the Property either to be sold on the advertised sale date or, at a minimum, to

be sold on a date that was advertised by publication.

45.     The language of Paragraph 22 would lead an ordinary consumer to believe that

his or her property would only be sold on an auction date that was published and consumers'

reasonable expectation from Paragraph 22 was that the Property would not be sold without the

general public being made aware of the sale date through a publication. Any contrary action by

Defendants was therefore unfair and/or deceptive within the meaning of HRS § 480-2.

46.     Exercising the claimed right or power to postpone the auction without publishing

the new sale date, ROSEN DEFENDANTS caused the auction of Plaintiff Hungate's Property to

be postponed to May 15, 2009. It was then postponed to June 12, 2009. It was then postponed

to July 17, 2009. It was then postponed to August 14, 2009 and was finally held on that date.

None of these dates was ever published.

47.     In an Affidavit of Foreclosure filed at the BOC on or about September 11, 2009

and recorded as Document No. 2009-139915 ("the Affidavit of Foreclosure re Hungate

Property"), the mortgagee reported that the postponement from April 17, 2009 to August 14,

2009 had been done "by mesne postponements." Specifically, the Affidavit of Foreclosure re

12

Hungate Property stated that: "A postponement was cried on April 17, 2009, original sale. Sale was postponed to August 14, 2009 by mesne postponements."

48.     On information and belief, the reference to "mesne postponements" refers to intervening proposed sale dates and postponements *between* April 17 and August 14, 2009 inasmuch as "mesne" means "intermediate" or "intervening". By virtue of the foregoing facts, the record shows that the auction sale date of Plaintiff Hungate's Property was postponed multiple times. In each instance, no notice of the proposed sale date was ever published.

49.     HRS § 667-5 (2008), in effect at the time of the above-described acts, only permitted the postponement of sale dates that had already been published three times in three successive weeks as required by Subsection 667-5(a) inasmuch as the statute only permitted postponement of a sale "of which notice has been given as aforesaid." Moreover, the public policy under the law permitting oral announcement of a postponement from the old time to a new time required sales to take place as soon as possible after the published date so as not to lose the attention gained by the original publication. Furthermore any purported right to postpone sales through "public announcement" granted by the statute did not vitiate or supersede the power of sale's requirement that the new sale date be published inasmuch as such publication can happen *in addition to* the public announcement.

50.     Following the foregoing postponement without publication of the sale of Hungate's Property, only a single bidder, DEUTSCHE, the claimed holder of the note secured by the Mortgage, bid at the August 14, 2009 auction, doing so *by "credit bid"* and thus revealing and confirming its role as the party directing and controlling the foreclosure process. As a result, DEUTSCHE was the winning bidder with a bid of $161,250. This sum was substantially below

13

the market value of the Plaintiff Hungate's Property. As a winning bidder and a mortgagee, the burden is on DEUTSCHE to justify its conduct of the sale process as fair to Plaintiff.

51.     The aforesaid conduct by Defendants violated Chapter 667 because it breached the provisions of the power of sale in the Mortgages and the duty implied therein to give wide publicity for the sale and seek the best price.

52.     The conduct of the Defendants as aforesaid chilled the bidding at the public auction of Plaintiff Hungate's Property, thereby violating Hawai'i's public policy.

53.     The conduct of Defendants in connection with the failure to publish the actual sale dates of the Plaintiffs' Properties took place "in the conduct of any trade or commerce" because, among other things, the transactions involved the sales of real property at public auctions conducted by said Defendants on terms of sale advertised by Defendants to the general public: (a) as part of Defendants' own business of representing foreclosing mortgagees; and (b) as part of DEUTSCHE's business in carrying out terms of mortgage contracts with consumers.

54.     By virtue of (a) the scheduling of a first sale date less than 29 days after the first publication and (b) the subsequent repeated postponement of that sale without any publication and (c) the selling of Plaintiff Hungate's Property on an unpublished date, either separately or in combination, Defendants have engaged in unfair and deceptive trade practices under HRS Chapter 480 and have violated both the power of sale in the mortgage and Chapter 667 (2008).

55.     The wrongful conduct of Defendants as aforesaid has caused Plaintiff to lose title to and possession of Plaintiff Hungate's Property unlawfully and thereby damaged him through a loss of his equity in the Property and the lost use of said Property.

56.     Plaintiff is a "person" within the meaning of HRS § 480-1.

57.     The conduct of Defendants described herein was wrongful and constituted unfair

methods of competition within the meaning of HRS. § 480-2 in at least the following respects:

(a) The "nature of the competition" was competition among buyers or prospective buyers of real

property, including both prospective auction bidders and foreclosing mortgagees and "credit

bidders" such as DEUTSCHE, who sought to acquire properties at non-judicial foreclosure

auctions at lower prices and resell them at higher prices. Defendants aided and assisted

foreclosing mortgagees in gaining an unfair competitive advantage over other persons or entities

who sought to acquire properties in foreclosure, by "chilling" bidding through their failure to

give the full notice period required after the first advertisement and by postponing sales without

giving adequate publicity of the new date; and (b) the "nature of the competition" was also

competition between (1) ROSEN DEFENDANTS and their affiliates or co-venturers in the

business of servicing mortgagees and (2) other law firms, agents or intermediaries that also

represented and serviced foreclosing mortgagees in non-judicial foreclosures of Hawai'i

mortgages, competing for the business of conducting foreclosures on behalf of mortgagees.

ROSEN DEFENDANTS gained an unfair competitive advantage over such other firms by

engaging in unlawful foreclosure practices that allowed them to increase profits and lower their

prices by shortening the overall time of the foreclosure process through not observing the 29

days requirement and not publishing notices of postponed auctions' rescheduled dates and times.

58.     The practices that allowed ROSEN DEFENDANTS to gain an unfair

competitive advantage also chilled bidding at foreclosure auctions to the substantial injury of

Plaintiff and other consumers.

59.     As a result of the August 14, 2009 auction of Plaintiff Hungate's Property,

DEUTSCHE received a "Mortgagee's Grant Deed Pursuant to Power of Sale," purportedly

executed by "OneWest Bank," describing itself as "successor in interest to the subject mortgage and note from IndyMac Federal Bank FSB." The deed was executed on or about October 14, 2009 and recorded at the BOC on or about October 30, 2009.

60.     As a direct and proximate result of the wrongful acts described above, Plaintiff has been actually harmed and injured in that he lost title, possession and occupancy of his Property. Said Property was subjected unlawfully to sale through the non-judicial foreclosure process and said sale occurred at below-market prices.

61.     As a direct and proximate result of the wrongful acts described above, Plaintiff sustained the following damages: (1) lost the net equity in Plaintiff Hungate's Property or otherwise had his net worth decreased or worsened by the sale of the Property in a distress sale system, as measured by the difference between the fair market value of the Property and the price at which it was wrongfully auctioned by Defendants and (2) lost the use of said Property from and after the date he lost possession by virtue of the foreclosure sale up until the date of judgment, which lost use should be measured by the fair market rental value for the period of lost use. The combined sum of these damages is presently unknown, but exceeds any minimum jurisdictional limit of this Court and the minimum sum required for a jury trial, and will be proven at trial.

62.     By virtue of the foregoing, ROSEN DEFENDANTS, DEUTSCHE and the Doe Defendants are liable to Plaintiff. Plaintiff is entitled under any and all applicable tort or recovery theories to recover their above-described economic losses sustained as a result of the above-described wrongful and/or unlawful conduct in amounts to be proved at trial.

63.     The conduct of Defendants described above was intentional, knowing, willful, wanton, reckless and /or grossly negligent. It further demonstrates a conscious disregard for the

16

rights of others. Plaintiff is therefore entitled to an award of punitive damages in amounts to be proved at trial that are sufficient to adequately punish Defendants given their financial condition and to deter them from such conduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly and severally, as follows:

(1)    For damages in favor of Plaintiff and against the Defendants in amounts to be determined at trial;

(2)    For reimbursement of costs and expenses, including reasonable provision for attorneys' fees in accordance with HRS Chapter 480;

(3)    For prejudgment interest;

(4)    For treble damages as provided by law;

(5)    For punitive damages;

(6)    For such further and additional relief as the Court deems appropriate and just.

DATED:      Honolulu, Hawai'i, August 6, 2013

JAMES J. BICKERTON
STANLEY H. ROEHRIG

Attorneys for Plaintiff
RUSSELL L. HUNGATE

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAI'I

RUSSELL L. HUNGATE,

       Plaintiff,

   vs.

THE LAW OFFICE OF DAVID B. ROSEN,
A LAW CORPORATION; DAVID B.
ROSEN; DEUTSCHE BANK NATIONAL
TRUST COMPANY and DOE
DEFENDANTS 1-50,

       Defendants.

CIVIL NO.
(Other Civil Action)

**DEMAND FOR JURY TRIAL**

## DEMAND FOR JURY TRIAL

Plaintiff RUSSELL L. HUNGATE hereby demands a trial by jury as to all issues so triable in the above-entitled cause.

DATED:     Honolulu, Hawai'i, August 6, 2013.

                                      JAMES J. BICKERTON
                                      STANLEY H. ROEHRIG

                                      Attorneys for Plaintiff
                                      RUSSELL L. HUNGATE

| STATE OF HAWAI'I<br>CIRCUIT COURT<br>OF THE FIRST CIRCUIT | SUMMONS<br>TO ANSWER CIVIL COMPLAINT | CASE NUMBER |
|---|---|---|

| PLAINTIFF,<br>RUSSELL L. HUNGATE | VS. | DEFENDANT.<br>THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION; DAVID B. ROSEN; DEUTSCHE BANK NATIONAL TRUST COMPANY and DOE DEFENDANTS 1-50, |
|---|---|---|

**PLAINTIFF'S ADDRESS (NAME, ADDRESS, TEL. NO.)**

RUSSELL L. HUNGATE
c/o JAMES J. BICKERTON
Bickerton Lee Dang & Sullivan
745 Fort Street, Suite 801
Honolulu, Hawaii 96813
(808) 599-3811

## TO THE ABOVE-NAMED DEFENDANT(S)

You are hereby summoned and required to file with the court and serve upon

Bickerton Lee Dang & Sullivan, 745 Fort Street, Suite 801, Honolulu, Hawaii 96813

plaintiff's attorney, whose address is stated above, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 P.M. AND 6:00 A.M. ON PREMISES NOT OPEN TO THE GENERAL PUBLIC, UNLESS A JUDGE OF THE ABOVE-ENTITLED COURT PERMITS, IN WRITING ON THIS SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.**

**A FAILURE TO OBEY THIS SUMMONS MAY RESULT IN AN ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DISOBEYING PERSON OR PARTY.**

| DATE ISSUED<br>AUG - 6 2013 | CLERK<br>S. TAMANAHA | **SEAL** | |
|---|---|---|---|
| I do hereby certify that this is full, true, and correct copy of the original on file in this office | Circuit Court Clerk | | |



In accordance with the Americans with Disabilities Act and other applicable state and federal laws, if you require a reasonable accommodation for a disability, please contact the ADA Coordinator at the First Circuit Court Administration Office at PHONE NO. 539-4333, FAX 539-4322, or TTY 539-4853, at least ten (10) working days prior to your hearing or appointment date.

SUMMONS TO ANSWER CIVIL COMPLAINT  1C-P-787