IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAVID EMORY BALD, individually and on behalf of others similarly situated; and EMILY LELIS, individually and on behalf of others similarly situated;<br><br>        Plaintiffs,<br><br>  vs.<br><br>WELLS FARGO BANK,<br><br>        Defendant. | CIVIL NO. 13-00135 SOM/KSC<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

**I.      INTRODUCTION.**

      Before this court is a case against Defendant Wells Fargo Bank ("Wells Fargo") arising from alleged conduct relating to the nonjudicial foreclosure of property owned by Plaintiff David together with his wife, Susan Coloma Bald ("the Balds"), as well as property owned by Plaintiff Emily Lelis.[1]  Currently before the court is Wells Fargo's Motion to Dismiss Plaintiffs'

---

[1] This case is a putative class action, but no class has been certified to date.

**EXHIBIT E**

First Amended Complaint ("Motion").[2] The court grants Wells Fargo's motion.

## II. BACKGROUND.

The Balds had real property in Honolulu, Hawaii (the "Bald Property"). First Am. Compl. ¶ 24, ECF No. 25. On July 26, 2007, a mortgage was recorded against the Bald Property to secure an unrecorded promissory note for a loan the Balds obtained in the amount of $535,000.00 (the "Bald Mortgage"). Id. ¶ 25.

Lelis also owned real property in Honolulu, Hawaii (the "Lelis Property"). Id. ¶ 26. On April 18, 2007, a mortgage was recorded against the Lelis Property to secure an unrecorded promissory note for a loan Lelis obtained in the amount of $500,000.00 (the "Lelis Mortgage"). Id. ¶ 27.

Both the Bald Mortgage and the Lelis Mortgage were filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii (the "Land Court"). Id. ¶¶ 25, 27. Plaintiffs describe Defendant Wells Fargo as the assignee for both the Bald Mortgage and the Lelis Mortgage. Id. ¶ 30.

Plaintiffs assert:

---

[2] Plaintiffs initially also sued David Rosen in both his professional and personal capacity. See ECF No. 1. On March 21, 2013, Rosen filed a Motion to Dismiss. ECF No. 5. On July 1, 2013, before this court had heard argument on Rosen's Motion to Dismiss, Plaintiffs dismissed Rosen from this lawsuit. ECF No. 40. Given Rosen's dismissal from this case, the court denies Rosen's Motion to Dismiss as moot.

2

> In executing their respective Mortgages,
> Plaintiffs BALD and LELIS each pledged all of
> their right, title, and interest in their
> Property to their mortagee, and each Mortgage
> (which was a standard-form single-family
> residential mortgage similar to the ones
> executed by other members of the Class) gave
> the mortgagee a power of sale under which
> Plaintiffs BALD and LELIS agreed to entrust
> the sale of all of their right, title, and
> interest in their Property to their mortgagee
> in the event they defaulted on their Note,
> with the proceeds in excess of amounts due
> under their Note plus costs to go back to
> Plaintiffs.  Each mortgagee in turn impliedly
> agreed to sell the interests of Plaintiffs
> BALD and LELIS in their respective Properties
> in a manner intended to obtain the best
> possible price for the Property so entrusted.
> Similar agreements by the original lender
> were made with respect to each member of the
> Class.

Id. ¶ 28.  Plaintiffs further assert that Plaintiffs "were each required by their respective lenders to have marketable title to their Properties in fee simple without encumbrances in order for such Properties to serve as adequate security for their loans." Id. ¶ 29.  As a result, "each lender knew that the interest pledged by Plaintiffs was an unencumbered fee simple interest that Plaintiffs had in turn acquired by warranty deed, and that is what each lender agreed to sell in the event that it exercised the power of sale."  Id.

Wells Fargo subsequently commenced nonjudicial foreclosure proceedings against Plaintiffs pursuant to section 667-5 of the Hawaii Revised Statutes and the power of sale contained in both Mortgages.  Id. ¶ 31.  With regard to the Bald

3

Mortgage, Wells Fargo "caused to be published in a newspaper of general circulation a 'Notice of Mortgagee's Intention to Foreclose Under Power of Sale' (the 'Bald Notice of Sale')." Id. ¶ 32.

Plaintiffs complain that Wells Fargo wrongly advertised the Bald Property and the Lelis Property as being sold by quitclaim deed only, even though Wells Fargo "knew or through the exercise of reasonable care should have known that there were no superior claims of title or priority to its own claim and that it therefore had the power and the duty to market and sell the property of each member of the class in fee simple." Id. ¶ 34. The Bald Plaintiffs argue that Wells Fargo's decision "had the foreseeable effect of discouraging potential buyers" and lowering the bidding prices. Id. ¶ 36.

On April 24, 2009, Wells Fargo auctioned the Bald Property. Id. ¶ 37. Wells Fargo submitted the high bid of $372,000.00. Id. The Balds allege that, because the Bald Property was sold for an amount that "was insufficient to satisfy the entire outstanding balance of the Bald Note," the Balds "continue[] to owe Defendant WELLS FARGO, or whomever currently owns the Note, the remaining unpaid balance." Id. ¶ 40. Wells Fargo subsequently sold the Bald Property to a third party via limited warranty deed for $399,000.00. Id. 38. Plaintiffs argue that Wells Fargo had a duty to sell the Bald Property and the

4

Lelis Property "on the best reasonable terms and conditions to get the best price." Id. ¶ 35.

With regard to the Lelis Property, Plaintiffs assert that Wells Fargo failed to comply with Paragraph 22 of the Lelis Mortgage. Paragraph 22 provides: "Lender shall publish a notice of sale and shall sell the Property at the time and place and under the terms specified in the notice of sale." Id. ¶ 48. Plaintiffs complain that "[t]he public auction of the Lelis Property was not held on February 18, 2011, as stated in the Lelis Notice of Sale." Id. ¶ 49. Instead, Wells Fargo postponed the auction until April 1, 2011, and "did not publish a notice of the postponed auction's rescheduled date and time." Id. ¶ 50.

Plaintiffs argue that Wells Fargo is liable for conducting foreclosure sales that were "contrary to the foreclosing mortgagee's duties under the power of sale and H.R.S. § 667-5" and "wrongful and an unfair and/or deceptive act or practice within the meaning of H.R.S. Chapter 480." Id. ¶ 41.

**III.     STANDARD OF REVIEW.**

    **A.     Rule 12(b)(1).**

To the extent Wells Fargo challenges Plaintiffs' standing, the court construes their motions under Rule 12(b)(1). See <u>HRPT Properties Trust. v. Lingle</u>, 676 F.Supp.2d 1036, 1041 (D. Haw. 2009). A challenge under Rule 12(b)(1) can be either a facial or a factual attack on jurisdiction. A facial attack

5

asserts that the allegations in a complaint are insufficient to invoke federal jurisdiction. A factual attack disputes the truth of the allegations that would otherwise confer federal jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). When standing is factually attacked in a Rule 12(b)(1) motion, the court may hear evidence before ruling on the issue. St. Clair v. City of Chico, 880 F.2d 199, 200-202 (9th Cir. 1989).

**B.  Rule 12(b)(6).**

Where a jurisdictional challenge fails, dismissal of claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)). "[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted); accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned,

6

the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 677.

**IV.     ANALYSIS.**

Plaintiffs allege wrongdoing by Wells Fargo in two respects. First, Plaintiffs argue that Wells Fargo breached a duty to Plaintiffs by advertising foreclosure sales through which property would be conveyed only by quitclaim deeds. Second, Plaintiffs argue that Wells Fargo violated section 667-5 of Hawaii Revised Statutes by failing to publish notices of foreclosure auction postponements. Plaintiffs assert that Wells Fargo's alleged failures on these fronts constitute both a violation of section 667-5 as well as a violation of section 480-2 of Hawaii Revised Statutes, which prohibits unfair and

deceptive acts and practices.  The court addresses each argument in turn.

**A.   This Court has Jurisdiction**.

Wells Fargo alleges that Plaintiffs do not have standing to bring their claims.

To establish standing, a plaintiff must demonstrate (1) actual or threatened injury that (2) is fairly traceable to the challenged action such that (3) it is likely to be redressed by a favorable decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  Although the burden of establishing standing lies with the party asserting federal jurisdiction, the manner and degree of evidence necessary to meet this burden varies depending on the stage of litigation.  Id. at 561.  At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice."  Id. (internal citations and quotations omitted).

Wells Fargo asserts that "Plaintiffs lack standing to assert claims against Wells Fargo as a trustee for any trust **other** than the two trusts that owned and held Plaintiffs' loans (the 'Unrelated Trusts').  Because Plaintiffs have not alleged that they have any connection to the Unrelated Trusts, Plaintiffs cannot meet their threshold jurisdictional burden of establishing their standing to assert claims against Wells Fargo as trustee fo the Unrelated Trusts."  Motion at 8-9.

The court rejects Wells Fargo's jurisdictional challenges. "It is familiar law that the liabilities incurred by trustees — whether such liabilities are in contract or in tort or under the terms of a statute — are their liabilities. They are principals." See also Henry Waterhouse Trust Co. v. King, 33 Haw. 1, 18 (1934). The trustee is therefore "subject to personal liability to third persons for torts committed in the course of the administration of the trust to the same extent that he would be liable of he held the property free of trust." Restatement (Second) of Trusts § 264 (1959).

Plaintiffs' general factual allegations of injury purportedly stemming from Wells Fargo's conduct are adequate for this stage in the litigation. With no class action presently certified, it is sufficient for Plaintiffs to have pled claims against Wells Fargo in whatever capacity Wells Fargo held their mortgages. Whether Wells Fargo's other capacities are in issue, and whether Plaintiffs may sue Wells Fargo in those other capacities, need not be addressed given the rulings in this order.

What remain in issue for now are the nonjurisdictional claims against Wells Fargo. The court examines the merits of those claims below.

9

### B. Hawaii's Nonjudicial Foreclosure Law Does Not Bar Quitclaim Deeds or Advertisements Stating That Only Quitclaim Deeds Will Be Provided.

Hawaii law does not require a conveyance in a nonjudicial foreclosure sale to be more than a quitclaim deed. See Haw. Rev. Stat. § 667-5.

The court asked Plaintiffs to come to the hearing on the present motion prepared to explain why the court should reach a result different from the result it reached in Lima v. Deutsche Bank and Gibo v. U.S. Nat'l Bank, 2013 WL 1856255 (Apr. 30, 2013). At the hearing, the Plaintiffs acknowledged that their case was very similar to the Lima case, yet urged the court to reconsider its earlier opinion.

In their papers, Plaintiffs relied heavily on two cases. First, like the plaintiffs in Lima, Plaintiffs in this case referred to Ulrich v. Security Inv. Co., 35 Haw. 158 (Haw. 1939), numerous times in their briefs.

Ulrich involved an attorney who owed $1,500 to his law partner. The debt was secured by a chattel mortgage assigning the borrower's interest in the general partnership and his one-half interest in all fees to be earned by the firm. The creditor-partner exercised a power of sale in the mortgage and held an auction at which he sold the partnership interest to himself for $250, without disclosing to potential third-party buyers prior to the auction that the law firm had a claim for

10

about $20,000 in fees in a case on which the mortgagor-partner had worked for over a decade. Id. at 173. The Hawaii Supreme Court reasoned that the "legal duties imposed upon the mortgagee required it to use all fair and reasonable means in obtaining the best prices for the property on sale." Id. at 168. Because the foreclosing partner took "wrongful and unfair advantage" of his partner, the court set aside the sale." Id.

Second, Plaintiffs in this case also rely on Silva v. Lopez, 5 Haw. 262 (Haw. 1884). Silva involved a sale made by the defendant as mortgagee under a power of sale. Id. at 262. Among other things, the plaintiff complained that the advertisement of the sale did not comply with the terms of the power of sale. Id. The court observed, "To effect a valid sale under power, all the directions of the power must be complied with." Id. Upon determining that the defendants had failed to comply with the "directions of the power," the court ruled that the sale of the real estate was invalid. Id. at 265.

Neither of these cases is persuasive as authority in the present case. First, Ulrich involved a chattel mortgage. By contrast, section 667-5 "is inapplicable if the mortgagee is foreclosing as to personal property only." Haw. Rev. Stat. § 667-5(g). Second, to the extent the Hawaii Legislature intended section 667-5 to embody any principle articulated in Ulrich or Silva, the Legislature certainly had the ability to include any

such principle in the nonjudicial foreclosure statute it passed. Yet section 667-5 nowhere suggests any principle derived from <u>Ulrich</u> on which Plaintiffs now rely. Certainly, section 667-5 does not state that a conveyance resulting from a nonjudicial foreclosure sale must be by limited warranty deed, or that an advertisement for a foreclosure auction must promise a limited warranty deed.

<u>Ulrich</u> was decided in 1939, and <u>Silva</u> was decided in 1884. Both cases were therefore decided many decades before the Hawaii Legislature substantially revised Hawaii's nonjudicial foreclosure statute in 2008. The language in <u>Ulrich</u> and <u>Silva</u> was therefore available to the Hawaii Legislature for inclusion or paraphrasing in any statute. Plaintiffs appear to be urging this court to read into statutory language requirements that the Legislature could have, but clearly did not, expressly adopt. In short, Plaintiffs are asking this court to rewrite section 667-5.

While borrowers might indeed benefit from additional statutory protections when borrowers do not have the benefit of court oversight, this court declines to overstep its proper role by inserting into section 667-5 such additional protections. The court is particularly concerned that it could create a host of problems if it were to rule, without further detail, that a quitclaim deed or an advertisement promising only a quitclaim deed violated a court-created duty to use reasonable means to

obtain the best price in a foreclosure sale. For example, a bar on conveyance by quitclaim or on an advertisement promising only a quitclaim could raise questions about what else is required or barred. In short, the language Plaintiffs ask this court to read into section 667-5 could lead to issues a legislature is far better positioned to address than a court is.

Even if Plaintiffs are correct in arguing that an established public policy of section 667-5 is to protect the mortgagor from the wrongful loss of property, Opp'n at 10, Plaintiffs fail to establish that any wrongful loss of property occurred.

C. **Publication of an Auction Postponement is Not Required by Hawaii Law**.

Hawaii law nowhere requires that notice of the postponement of a nonjudicial foreclosure sale be published in a newspaper. Rather, section 667-5(d) of the Hawaii Revised Statutes provides: "Any sale, of which notice has been given . . . may be postponed from time to time by public announcement made by the mortgagee or by a person acting on the mortgagee's behalf." The First Amended Complaint does not allege that public announcements were not made. Instead, Plaintiffs appear to be contending that the only permissible public announcement is a "published notice" in a newspaper. No statute, contract provision, or case authority equates "announcement" with "publication in a newspaper."

13

D.  **Plaintiffs Do Not State a Section 480-2 Violation**.

Because Plaintiffs' allegations regarding advertisement of or conveyance by a quitclaim deed, as well as their allegations regarding the postponement of foreclosure sales, fail to assert actionable misconduct by Wells Fargo, the court also concludes that Plaintiffs do not state a UDAP violation. These conclusions make it unnecessary for this court to address Wells Fargo's other arguments for dismissal.

V.  **CONCLUSION**.

The court grants Wells Fargo's Motion to Dismiss. The Clerk is directed to enter judgment for Wells Fargo and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 25, 2013.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

David Bald et al. v. Wells Fargo Bank, 13-cv-00135 SOM/KSC, ORDER GRANTING DEFENDANT'S MOTION TO DISMISS