PERKIN & FARIA
JOHN F. PERKIN                    1673
700 Bishop Street, Suite 1111
Honolulu, Hawaii  96813
Tel.  (808) 523-2300

BICKERTON DANG, LLLP
JAMES J. BICKERTON               3085
STANLEY H. ROEHRIG                664
BRIDGET G. MORGAN                8705
745 Fort Street, Suite 801
Honolulu, Hawaii  96813
Tel.  (808) 599-3811

AFFINITY LAW GROUP
VAN-ALAN H. SHIMA                8176
1188 Bishop Street, Suite 3408
Honolulu, Hawaii 96813
Tel.  (808) 545-4600

Attorneys for Plaintiffs
LIONEL LIMA, JR.,
BARBARA-ANN DELIZO-LIMA, and
CALVIN JON KIRBY, II,
individually and on behalf of
all others similarly situated.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| LIONEL LIMA, JR., and BARBARA-ANN DELIZO-LIMA; and CALVIN JON KIRBY II individually and on behalf of those similarly situated,<br><br>            Plaintiffs,<br><br>    vs. | Civil No. 12-00509 SOM-RLP (Class Action)<br><br>**[PROPOSED] SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS** |

EXHIBIT B

DEUTSCHE BANK NATIONAL
TRUST COMPANY; THE LAW
OFFICE OF DAVID B. ROSEN, A
LAW CORPORATION; DAVID B.
ROSEN, and Doe DEFENDANTS 1-
50,

         Defendants.

## [PROPOSED] SECOND AMENDED COMPLAINT

Plaintiffs LIONEL LIMA, JR., BARBARA-ANN DELIZO-LIMA,

CALVIN JON KIRBY II, LENEEN KRON, fka LENEEN BAYBADO,

DEIRDRE-DAWN K. CABISON, JAMES C. CLAY, SCOTT A. CORYEA,

KATHERYN CORYEA, RICHARD H. FARNHAM, NANCY L. FARNHAM,

TIMOTHY RYAN, DONNA RYAN, KANIALA SALIS, and BRIAN S.

WEATHERLY, individually and on behalf of all persons similarly situated, for

complaint against Defendant DEUTSCHE BANK NATIONAL TRUST

COMPANY ("DEUTSCHE BANK"), allege as follows:

## PARTIES

1.      Plaintiffs LIONEL LIMA, JR. and BARBARA-ANN DELIZO-

LIMA, (collectively "the Limas" or "Plaintiffs LIMA") are, and at all times

relevant hereto were, residents of the City and County of Honolulu, State of

Hawaii.

2.      Plaintiff CALVIN JON KIRBY, II ("Kirby" or "Plaintiff KIRBY") is, and at all times relevant hereto was, a resident of the County of Hawaii, State of Hawaii.

3.      Plaintiff LENEEN KRON fka LENEEN BAYBADO ("Kron" or "Plaintiff KRON") is, and at all times relevant hereto was, a resident of the County of Maui, State of Hawaii.

4.      Plaintiff DEIRDRE-DAWN K. CABISON ("Cabison" or "Plaintiff CABISON") is, and at all times relevant hereto was, a resident of the County of Hawaii, State of Hawaii.

5.      Plaintiff JAMES C. CLAY ("Clay" or "Plaintiff CLAY") is, and at all times relevant hereto was, a resident of the County of Hawaii, State of Hawaii.

6.      Plaintiffs SCOTT A. CORYEA and KATHERYN CORYEA ("Coryea" or "Plaintiffs CORYEA") are, and at all times relevant hereto were, residents of the State of California.

7.      Plaintiff RICHARD H. FARNHAM and NANCY L. FARNHAM ("the Farnhams" or "Plaintiffs FARNHAM") are, and at all times relevant hereto were, residents of the County of Hawaii, State of Hawaii.

8.      Plaintiffs TIMOTHY RYAN and DONNA RYAN ("the Ryans" or "Plaintiffs RYAN") are, and at all times relevant hereto were, residents of the State of California.

9.     Plaintiff KANIALA SALIS ("Salis" or "Plaintiff SALIS") is, and at all times relevant hereto was, a resident of the County of Hawaii, State of Hawaii.

10.     Plaintiff BRIAN S. WEATHERLY ("Weatherly" or "Plaintiff WEATHERLY") is, and at all times relevant hereto was, a resident of the State of Florida.

11.     At all material times, DEUTSCHE BANK is and was a national banking association organized under the laws of the United States of America to carry on the business of a limited purpose trust company.  DEUTSCHE BANK's main office and principal place of business purports to be located at 300 South Grand Avenue, Suite 3950, Los Angeles, California 90071, and the principal site of its trust administration is located at 1761 East St. Andrew Place, Santa Ana, California 97025.

12.     All conditions precedent to filing this suit, including any requirement of notice to any party, have been either satisfied or waived, or have become unnecessary because "it is reasonably certain" that any demand to compensate Plaintiffs or otherwise correct the harm caused to them by Defendants "will be refused."  *See Johnson v. Tisdale*, 4 Haw. 605, 1883 WL 7007, 3 (Haw. Kingdom 1883) (wrongful foreclosure case).

## CLASS ACTION ALLEGATIONS

13.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Haw. R. Civ. P. Rule 23.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

14.     This case arises out of DEUTSCHE BANK's actions and the actions of certain of its agents in purporting to exercise its power of sale granted under mortgages with respect to Plaintiffs' properties and the property of the other members of the proposed Class.  In that exercise, DEUTSCHE BANK breached its duties to act in good faith to sell the properties to the owners' best advantage and to use reasonable diligence to secure the best possible price, because it advertised the sale as the sale of the properties by "quitclaim deed," without a sufficient property description, after failing to give the required acceleration notice.  In a substantial number of cases, DEUTSCHE BANK caused auctions to be postponed without publishing the notice of the new date and time as required by the mortgage terms and/or the applicable statute.

15.     DEUTSCHE BANK thus (1) breached duties to act in good faith to sell the properties to the owners' best advantage and to use reasonable diligence to secure the best possible price, and (2) systematically violated the provisions and

conditions of the power of sale and/or the statute governing such nonjudicial foreclosures.

16.     DEUTSCHE BANK reasonably could and should have advertised the sales as a conveyance by a warranty deed, warranting at the very least that DEUTSCHE BANK had the right to sell and the sale was authorized. DEUTSCHE BANK and its agents were also required to publish a notice of the date and time of any postponed sale, and breached that duty in a substantial number of the class members' cases.

17.     By adopting the following policies and practices, Defendant DEUTSCHE BANK created a non-judicial foreclosure system whose combined and cumulative effect substantially reduced competition between the Bank and bidders at non-judicial auctions for the purpose of allowing DEUTSCHE BANK to (a) purchase foreclosure properties cheaply on "credit bid," with no or minimal competition from prospective third-party bidders, for later resale at higher prices and/or (b) earn additional profits, commissions and/or servicing fees by holding and re-selling Real Estate Owned ("REO") property.

18.     The policies and practices of Defendant DEUTSCHE BANK that actively, knowingly, intentionally, and/or grossly negligently violated the power of sale, the foreclosure statute and/or "chilled" competitive bidding included, but were not limited to:

a.   Recording and publishing Notices of Sale that did not include a "description of the mortgaged property" (a) as required by HRS Section 667-7(a)(1) (2008) and (b) which was "sufficient to inform the public of the nature of the property to be offered for sale" and "calculated to interest purchasers," as required by *Ulrich v. Sec. Inv. Co.*, 35 Haw. 158, 172-73 (1939);

b.   Publishing and/or posting the Notice of Sale for less time than required by statute;

c.   Selling the property despite having failed to send the borrower a notice of acceleration that gave the notice that the standard form mortgage required about the unconditional right the borrower had to bring a separate suit to stop the sale.

d.   Issuing notices of sale that lacked a description of the property that would interest prospective buyers and/or comply with statute;

e.   Advertising the auctions of properties by "quitclaim deed" and/or without any covenants or warranties of title whatsoever;

f.   Postponing auctions so frequently that the substantial majority of sale dates advertised in the Class's published notices of sale were not the actual auction dates;

    g.  Postponing auctions without publishing notices of the

rescheduled auctions' new dates and times;

    h.  Changing the location of the auction without publishing the

new location; and

    i.  Including as a term of sale that time was of the essence and that

successful bidders were expected to close their sales within thirty days of

their auctions, when in fact such sales either never, or almost never, closed

within the specified timeframe

19.    By adopting the foregoing policies and practices, DEUTSCHE BANK

created a non-judicial foreclosure system whose combined and cumulative effect

substantially reduced competition between the Banks and bidders at non-judicial

auctions for the purpose of allowing DEUTSCHE BANK to purchase foreclosure

properties cheaply on "credit bid," with no or minimal competition from

prospective third-party bidders, for later resale that would generate higher prices

and/or fees and commissions for itself, to the detriment of Plaintiffs and other

members of the proposed Class.

20.    The non-judicial foreclosure system created by DEUTSCHE BANK

negatively impacted all of the Class to a similar degree regardless of whether each

Plaintiff's own foreclosure exhibited some, most, or all of the policies and

practices that contributed to the systemic "chilling" of the non-judicial auction

market.  Because the market as a whole was depressed, all of the Class was harmed by the "chilled" bid prices Defendants' non-judicial foreclosure system caused.

21.     DEUTSCHE BANK was responsible for ensuring compliance of its foreclosures with H.R.S. §§ 667-5 et seq., the powers of sale contained in the foreclosed mortgages, and Hawaii common law in foreclosing on properties of members of the Class, but it failed to comply with the power of sale provisions, Hawaii common law and/or Chapter 667 Part I.  This failure was due in part to the fact that it failed to sufficiently oversee outside counsel and other third-party providers handling foreclosure-related services.  DEUTSCHE BANK understaffed its compliance and oversight efforts and selected low-cost counsel who in turn omitted routinely important required steps in the foreclosure process.  DEUTSCHE BANK committed this unfair and deceptive trade practice to grow business by cutting costs to the detriment of Plaintiffs and other members of the proposed Class.

22.     Plaintiffs bring this case as a class action pursuant to Rule 23 of the Hawai'i Rules of Civil Procedure, on behalf of themselves and all others who are similarly situated consisting of:

> All consumers within the meaning of H.R.S. Chapter 480 who owned real property in Hawaii (and all persons holding the claims of such consumers by assignment or operation of law) and who were subjected to a notice of foreclosure sale under H.R.S. § 667-5 by or on behalf of DEUTSCHE BANK claiming the rights of a mortgagee with a power of sale wherein the

notice of sale was published on or after June 4, 2008, and with respect to said notice of sale DEUTSCHE BANK:

(a)  advertised the sale as being the sale of a quitclaim deed or equivalent; and

(b)  sold the property at a non-judicial auction sale.

This group is hereafter referred to as "**the Class**."

23.    The Proposed Class further includes a Subclass ("**Subclass A**")

consisting of:

> all members of the Class whose non-judicial auction sale was not held on both the date and location specified in the original published notice (i.e., either or both the date and/or location were changed), without one or more of the following conditions being satisfied (a) publication of the notice of the changed date or location in three successive weeks; (b) publication of a notice stating the new date and time for the sale at least 29 days after the first publication of such notice.

At least 300 members of the Class fall into Subclass A.

24.  The Proposed Class further includes a Subclass "B" ("**Subclass B**")

consisting of:

> All members of the Class whose Notice of Sale was published or posted for less time before the proposed auction date than required for such publishing or posting by HRS Chapter 667, Part I.

At least 100 members of the Class fall into Subclass "B".

25.  The Proposed Class further includes a Subclass "C" ("**Subclass C**")

consisting of:

10

> All members of the Class whose Notice of Sale contained no "description" of the property within the meaning of HRS Section 667-7(a)(1) or only a "metes and bounds" description of the land.

Plaintiffs believe and on information and belief allege that all members of the Class fall into Subclass "C," but include this Subclass in the event that any members of the Class are found to exist who had adequate property descriptions in their Notices of Sale.

26.  The Proposed Class further includes a Subclass "D" ("**Subclass D**") consisting of:

> All members of the Class who received a notice of acceleration that did not inform them of their unconditional right to bring a separate court action to stop the sale.

Plaintiffs believe and on information and belief allege that the vast majority of members of the Class fall into Subclass "D".

27.  Excluded from the Class are:  (a) Defendant DEUTSCHE BANK, its subsidiaries, affiliates, officers, and directors, and any entity in which DEUTSCHE BANK has a controlling interest; (b) all persons who make a timely election to be excluded; (c) governmental entities; and (d) all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

28.  Since June 4, 2008, owners of over 575 Hawaii real properties have been subjected to non-judicial foreclosure proceedings by DEUTSCHE BANK

using a purported power of sale in which the mortgagee merely offered the property for sale by quitclaim deed.  Thus, the members of the Class are sufficiently numerous that joinder of all members in a single action is impracticable.

29.    A class action is appropriate in this case for one or more of the following reasons:

a.    The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, the amount at stake for many of the Class members, while not insignificant, is likely not great enough to enable each of them to maintain separate suits against Defendant DEUTSCHE BANK, one of the largest corporations in the world with a huge stake in opposing any claim of wrongful foreclosure because of its involvement nationwide in thousands of other similar foreclosures.

b.      Defendant DEUTSCHE BANK has acted on grounds generally applicable to the Class, making appropriate declaratory relief with respect to the Class as a whole as set forth below.

30.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Among the questions of law and fact common to the all named Plaintiffs and the Class, or to Plaintiffs (other than the Limas) and the members of Subclass A, are *inter alia:*

a)      Whether Defendant DEUTSCHE BANK adopted policies and practices that had the purpose or effect of "chilling" bid prices at non-judicial auctions;

b)      Whether Defendant DEUTSCHE BANK when acting in the capacity of a foreclosing mortgagee under power of sale, breached the duty to use good faith efforts to secure the best advantage for members of the Class in the sale of their properties under a power of sale in their mortgages, including securing the best possible price;

c)      Whether Defendant DEUTSCHE BANK when acting in the capacity of a foreclosing mortgagee under power of sale, had a duty to offer

and auction the properties of members of the Class with a warranty of the mortgagee's own authority to sell;

d)      Whether Defendant DEUTSCHE BANK when acting in the capacity of a foreclosing mortgagee under power of sale, breached duties as the holder of the power of sale by offering to convey the properties of members of the Class to the high bidders at auction by a mere quitclaim deed and/or without any covenants or warranties of title;

e)      Whether offering real property for sale at non-judicial foreclosure auctions by quitclaim deed and/or without any covenants or warranties of title was an unfair and deceptive practice under HRS Chapter 480;

f)      Whether offering real property for sale at non-judicial foreclosure auctions by quitclaim deed and/or without any covenants or warranties of title was a breach of duty entitling Class members to recover damages for wrongful foreclosure;

g)      Whether Hawaii law requires the Notice of Sale to contain any description of the property in addition to its address and TMK number and, if so, whether a mere metes and bounds of the land satisfies that requirement;

h)      Whether Defendant DEUTSCHE BANK'S above-described conduct constitutes an unfair and deceptive trade practice within the meaning of H.R.S. Chapter 480;

i)      The measure of damages under Hawaii law for foreclosing a mortgagor's property through an auction sale in which the seller's Notice of Sale did not offer any warranty of its own right and authority to sell or any adequate description of the Property or otherwise violated the power of sale or the foreclosure statute in giving notice of the sale;

j)      Whether the sales of property by Deutsche are void or merely voidable and the effect of such determination on damages; and

k)      The nature and extent of class-wide injuries.

31.    Plaintiffs' claims are typical of the claims of other Class members, in that their claims arise out of the same wrongful foreclosure policies and practices repeatedly and routinely performed by the Defendant DEUTSCHE BANK in connection with non-judicial foreclosures under power of sale. Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other Class member.

32.    Plaintiffs are committed to the vigorous prosecution of this action. Plaintiffs know of no conflicts of interest among members of the Class.

33.    Plaintiffs have retained competent counsel experienced in the

prosecution of class actions and, in particular, class actions on behalf of consumers in this jurisdiction.  The Class will therefore be represented by counsel who can adequately represent the interests of the entire Class.

34.    Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

35.    Class action treatment is superior to the alternatives for the fair and efficient adjunction of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single action simultaneously, efficiently, and without duplication of the expenses that numerous individual actions would entail.  No difficulties are likely to arise in the management of this class action that will preclude its purpose as a class action, and no superior alternatives exist for the fair and efficient adjunction of this controversy.  Without a class action, Defendants will likely retain the benefit of their wrongdoing and may continue the course of their actions, which could result in further damages.

36.    Databases are maintained by Defendant DEUTSCHE BANK which include foreclosure victims' names and addresses and the dates on which DEUTSCHE BANK carried out its foreclosure proceedings.  Other databases maintained by government entities reflect the commencement and conclusion of foreclosure proceedings, and the sale or transfer of the properties in question.

Thus, records are readily available for purposes of identifying all members of the Class and providing notice of the instant class action to all Class members and determining the nature and size of each member's claim.

## COUNT I – WRONGFUL FORECLOSURE

37.    Plaintiffs LIMA are and were the lawful owners of real property at 1060 Kamehameha Highway, Apt. 2303A, Pearl City, Hawaii ("the Lima Property").

38.    Plaintiff KIRBY is and was the lawful owner of real property at 16-2080 Paradise Drive, Pahoa, Hawaii ("the Kirby Property").

39.    Plaintiff KRON is and was the lawful owner of real property at  1353 Hoapili St, Lahaina, Maui, TMK No. 2-4-5-012-047-0000 ("the Kron Property").

40.    Plaintiff CABISON is and was the lawful owner of real property at 133 Aapi Pl., Hilo, Hawaii, TMK No. 3-2-4-059-061-0000 ("the Cabison Property").

41.    Plaintiff CLAY is and was the lawful owner of real property at 75-5776 Kuakini Highway, Unit 233, Kailua-Kona, TMK No. 3-7-5-008-003-0081 ("the Clay Property").

42.    Plaintiffs CORYEA are and were the lawful owners of real property at 6683 Kuhoho St, #2, Kapaa, Kauai, TMK No. 4-4-2-011-062-0002 ("the Coryea Property").

43.     Plaintiffs FARNHAM are and were the lawful owners of real property at 74-4910 Hao Kuni Pl., #6, Kailua-Kona, Hawaii. TMK No. 3-7-4-007-104 ("the Farnham Property").

44.     Plaintiffs RYAN are and were the lawful owners of real property at 320 Papaloa Rd, Unit #111, Kapaa, Kauai, TMK No. 4-4-1-005-003-0011 ("the Ryan Property").

45.     Plaintiff SALIS is and was the lawful owner of real property at  55-525 Mau Pl., Hawi, Hawaii, TMK No. 3-5-5-017-047-0000 ("the Salis Property").

46.     Plaintiff WEATHERLY is and was the lawful owner of real property at 1684 Ala Moana Blvd, #253, Honolulu, Hawaii, TMK No. 1-2-6-011-022-0007 ("the Weatherly Property").

47.     Each Plaintiff gave a mortgage on their respective as security for a loan ("the Mortgage" or "the Mortgages").  The Mortgages and the notes reflecting this indebtedness and security were executed by Plaintiffs in each case, and the Mortgages were thereafter recorded in the Bureau of Conveyances and/or the Office of the Assistant Registrar of the Land Court of the State of Hawaii.  In some cases (such the case of Plaintiff KIRBY), the mortgagee of record on the Mortgage was Mortgage Electronic Registration Systems, Inc., a Delaware corporation ("MERS"), as nominee for the lender and in all such cases, the actions of MERS were on behalf of and as agent and nominee for DEUTSCHE BANK.

48.     In executing their respective Mortgages, Plaintiffs each pledged all their right, title and interest in their Property to their mortgagee, and each Mortgage (which was a standard residential mortgage similar to the ones executed by other members of the Class) gave the mortgagee a power of sale under which Plaintiffs agreed to entrust the sale of all their right, title and interest in their Property to their mortgagee in the event they defaulted on their note, with the proceeds in excess of amounts due under the note plus costs to go back to Plaintiffs.  Each mortgagee in turn impliedly agreed to sell the interests of Plaintiffs in their respective Properties in a manner intended to obtain the best possible price for the Property so entrusted. Similar agreements by the original lender were made with respect to each member of the Class.

49.     Plaintiffs were each required by their respective lenders to have marketable title to their Properties in fee simple without encumbrances in order for such Properties to serve as adequate security for their loans.  Hence, each lender knew that the interest pledged by Plaintiffs was an unencumbered fee simple interest that Plaintiffs had in turn acquired by warranty deed, and that is what each lender agreed to sell in the event that it exercised the power of sale.   Similar conduct by the original lender took place with respect to each member of the Class.

50.     Each class member's mortgage contained a power of sale that was

identical, as well as identical conditions for its exercise.  Each such mortgage and power of sale incorporated into themselves by operation of law the requirements of HRS Chapter 667 Part I and that statute in turn required (a) the mortgagee to give a specific notice of the mortgagors rights to follow the power of sale and do all acts and give all notices required thereby, (b) to publish a notice of sale at a specified time in relation to the proposed sale date, and (c) to issue a notice of sale that contained a description of the property.

51.    In the case of each Plaintiff and each member of the Class, DEUTSCHE BANK purported to be the owner of the mortgage loan and to have the rights of the mortgagee entitled to foreclose the loan under HRS Chapter 667 Part I or to have agents act in such capacity.

52.    DEUTSCHE BANK commenced non-judicial foreclosure proceedings against Plaintiffs and their respective Properties purportedly pursuant to the power of sale contained in each of their Mortgages.  Similar conduct by DEUTSCHE BANK took place with respect to each member of the Class.  Hawaii law only permits such sale if and so long as the mortgagee or successor in interest holding the power of sale strictly complies with the power of sale and with H.R.S. §§ 667-5, 667-7 and 667-8, which required, among other things, that DEUTSCHE BANK give notice of the sale of "the mortgaged property, that the DEUTSCHE BANK "do all acts as authorized or required by the power contained in the

mortgage," that DEUTSCHE BANK publish a notice of sale at a specific time, that the notice contain a statement of the time and place of the sale, and that the notice contain a description of the property. Under Hawaii law, the power of sale requires the holder of the power, among other things, to (a) sell that property which has been pledged under the power, and not some lesser interest, (b) use good faith efforts to sell said property in a manner designed to secure the "best advantage" to the owner of the property and use reasonable diligence to secure the "best possible price" for the owner of the property and to follow strictly any terms and conditions of the power of sale. Failure to comply with these obligations violates the duties under the power of sale and H.R.S. § 667-5 and renders the sale void or at the very least voidable.

53. In connection with its foreclosure of each Plaintiff's Property, DEUTSCHE BANK caused to be published a "Notice of Mortgagee's Intention to Foreclose Under Power of Sale" (the "Notice of Sale"), which was also recorded in the Bureau of Conveyances. Similar notices by DEUTSCHE BANK were published and recorded with respect to the first scheduled auction date for each member of the Class.

54. Each Plaintiff's Notice of Sale stated that the Property was being sold "AS IS" and "WHERE IS," and "without covenant or warranty, either express or implied, as to title, possession or encumbrances" or similar words to the same

effect.  These terms are commonly referred to as a "quitclaim deed."  Similar conduct by DEUTSCHE BANK took place with respect to each member of the Class.

55.    DEUTSCHE BANK, as mortgagee acting under a power of sale, was under a duty to offer at least a limited warranty of its own right to sell and that it had not caused any defect or deficiency in title by its acts or omissions, the usual duty of one undertaking to sell the property of another in any confidential, fiduciary or quasi-fiduciary relationship.

56.    DEUTSCHE BANK also knew or through the exercise of reasonable care should have known that there were no superior claims of title or priority to its own claim and that it therefore had the power and the duty to market and sell the property of each member of the Class in fee simple, with warranties of title and encumbrances, as it was when mortgaged by Plaintiffs and encumbered with the power of sale under the mortgage.  Similar conduct by DEUTSCHE BANK took place with respect to each member of the Class.

57.    As the purported owner of each Plaintiff's Mortgage, DEUTSCHE BANK had a duty to sell the respective Properties on the terms and conditions intended to get the best price, for the benefit of Plaintiffs, and not to subvert or sabotage Plaintiffs' interests in the process.  Similar duties were owed by DEUTSCHE BANK to each member of the Class.

58.     In connection with its foreclosure of each Plaintiff's Property, DEUTSCHE BANK through its agents held a public auction sale of the Property at which the attendees and interested potential purchasers were told by the Notice of Sale that warranties of title were unavailable and that only a quitclaim deed would be conveyed.  Similar conduct by DEUTSCHE BANK took place with respect to each member of the Class.  This had the foreseeable effect of discouraging potential buyers and caused the auction prices to be lower than they would have been if the sales had been advertised as conveying at least a limited warranty deed. Similar conduct by DEUTSCHE BANK took place with respect to each member of the Class, whose sale prospects and prices were all adversely affected by the offering of a mere quitclaim deed or substantial equivalent.

59.     Advertising sale by quitclaim deed in these circumstances was not reasonably calculated to obtain the best possible price or give the property owner the best advantage and was therefore a breach of duty by DEUTSCHE BANK.

60.     At the auction of the Lima Property, the successful bidder bid substantially below the market price of the Property.  DEUTSCHE BANK caused the Property to be conveyed to said bidder by Limited Warranty Deed, not the quitclaim deed advertised.  This bidder re-sold the Property for approximately $50,000 more than the bid price within less than four months.

61.     Sales such as the sales of the Lima Property that included a deed or

23

closing date different from the terms of the published notice were in violation of the power of sale because the power of sale required the sale to be on the terms stated in the published notice.

62.     Similar conduct by DEUTSCHE BANK to that described in the preceding paragraph took place with respect to approximately 9 other members of the Class in which third party bidders received limited warranty deeds.  With respect to other members of the Class, DEUTSCHE BANK conveyed their property to itself or others by quitclaim deed.  In cases where DEUTSCHE BANK was the successful bidder, it has routinely thereafter sold the properties to third parties via warranty deeds despite having advertised the foreclosure sales as only offering quitclaim deeds, thereby demonstrating that it is within its power and ability to offer a warranty deed on properties otherwise advertised for sale by quitclaim deed only.

63.     DEUTSCHE BANK, acting with the assistance of the servicer indicated below in parentheses as its agent, for whose conduct DEUTSCHE BANK is vicariously liable, recorded an Affidavit of Foreclosure for each Plaintiff on the following dates that revealed the foregoing conduct by DEUTSCHE BANK:

        a.  Plaintiffs LIMA 5/26/2009 (Chase Home Finance)

        b.  Plaintiff KIRBY 10/15/2009 (Countrywide Home Loans)

        c.  Plaintiff KRON 3/9/2010 (PNC Mortgage)

d.  Plaintiff  CABISON 2/24/2011 (Countrywide Home Loans)

e.  Plaintiff CLAY 3/15/2011 (Carrington Mortgage Services)

f.  Plaintiffs CORYEA 3/21/2011 (OneWest Bank)

g.  Plaintiffs FARNHAM 4/8/2011 (OneWest Bank)

h.  Plaintiffs RYAN 2/3/2011 (GMAC)

i.  Plaintiff SALIS 3/12/2010 (OneWest Bank)

j.  Plaintiff WEATHERLY 6/19/2009 (Countrywide Home Loans)

64.    The foregoing affidavits are public records and are incorporated herein by reference.  They include copies of the relevant noticed of sale showing the terms on which the properties were offered for sale and the deceptive statements described elsewhere herein regarding the deed being offered to bidders and the date that closing would be required to avoid forfeiture were contained in the notices of sale.

65.    Plaintiffs CORYEA additionally had their auction location changed from the original location without any publication of the new location.  This was a separate violation of the power of sale because the power required that the sale take place at a location stated in a published notice.  On information and belief at least 40 auctions of class members took place at locations other than the location published in the newspaper.

66.    Plaintiffs CLAY, RYAN and SALIS all are members of Subclass B in that their published auction dates were less than 29 days after the date of first publication.

67.    All Plaintiffs are members of Subclasses C and D.

68.    The wrongful foreclosure sale of the Property of each Plaintiff caused each Plaintiff to be deprived of possession and title and thus to suffer the economic loss (sometimes referred to as "out of pocket loss") of (1) all monies they had expended in connection with the purchase and improvement of the property, (2) to the extent not included in the foregoing item, the Property's market value, (3) interest on the foregoing sums at the statutory rate and (4) the value of the lost use of the property since the wrongful foreclosure, which may be measured by the rental value of the Property from the time of foreclosure to the time of judgment, and (5) moving expenses and rental expenses of alternative housing.  Similar harm was suffered by the other members of the Class. Plaintiffs and the Class have therefore been harmed financially by the above-described conduct of DEUTSCHE BANK.

69.    The foreclosure sale by DEUTSCHE BANK in the case of each Plaintiff and in the case of the other members of the Class was contrary to DEUTSCHE BANK's duties under the power of sale and H.R.S. § 667-5, was wrongful and an unfair and deceptive act or practice within the meaning of H.R.S.

Chapter 480, and DEUTSCHE BANK is therefore liable in damages to Plaintiffs and the Class for all harm caused by said wrongful exercise of the power of sale.

70.    As a proximate result of DEUTSCHE BANK's unfair and deceptive practices in foreclosing the Plaintiffs' Mortgages and the subsequent loss of title to and possession of the Properties by Plaintiffs as a result of the foreclosure process, and the foreclosure proceedings and property loss for each member of the Class, Plaintiffs and the other members of the Class lost title and possession of their real property.  Said real properties were subjected to sale through the foreclosure process, and said sales and transfers of ownership occurred at below-market prices because of the "distress sale" nature of the transaction.

71.    As a direct and proximate result of the wrongful acts described above, Plaintiffs and the other members of the Class the monies they had invested or expended in acquiring the Properties, lost the market value of the Properties, lost the use and rental value of their properties from and after the date they lost possession, and incurred moving expenses and rental expenses, all in amounts they are entitled to recover and to be proved at trial.

72.    DEUTSCHE BANK's publication of each Plaintiff's Notice of Sale was required by Paragraph 22 of the Mortgage, which provided that "Lender shall publish a notice of sale and shall sell the Property at the time and place and under the terms specified in the notice of sale."  Similar language governing the

mortgagee's exercise of the power of sale is believed to be contained in all other mortgages of Class members' Hawaii properties that were foreclosed upon non-judicially through the power of sale.

73.    DEUTSCHE BANK authorized, instructed, and/or ordered MERS to record the Kirby Notice of Sale on behalf of DEUTSCHE BANK, and to otherwise serve as foreclosing mortgagee of the Kirby Mortgage on behalf of and at the direct of DEUTSCHE BANK.  Similar notices by DEUTSCHE BANK acting directly or through MERS were published and recorded with respect to the first scheduled auction date for other members of the Class.

74.    The public auctions of the Kirby Property, Kron Property, Cabison Property, Clay Property, Coryea Property, Farnham Property, Ryan Property, Salis Property and Weatherly Property were not held on the dates stated in the Notices of Sale for those Properties and these Plaintiffs are all members of Subclass A. Instead, DEUTSCHE BANK and/or its agents chose to postpone the auction to a later date and time.  Postponements occurred in over 300 of the Class members' foreclosures (*i.e.* Subclass A is comprised of more than half of the Class).

75.    DEUTSCHE BANK claimed the authority to schedule or reschedule the auction from the date stated in the written notice of sale based on the issuance of the original notice that had been served, posted and published.  However, because the Mortgage in each case instructed that the mortgagee "***shall*** sell" at the

28

time and location stated in the notice, the Mortgage did not authorize

postponements of a duly noticed sale.  (Emphasis added).  A foreclosure, once

commenced, had to be completed as scheduled or the sale cancelled.  Any future

auction was required to be the subject of a new published notice.

76.     Such new notice was required to comply with all statutory

requirements, including recordation, posting, publication in three successive weeks

and a proposed date at least 29 days after first publication.

77.     In attempting or purporting to postpone the auctions of Plaintiffs

Kirby, Kron, Cabison, Clay, the Coryeas, the Franhams, the Ryans, Salis and

Weatherly, DEUTSCHE BANK did not publish a notice of the postponed

auction's rescheduled date and time.  In the case of the sale of the Coryea Property,

DEUTSCHE BANK also did not publish the location fo the eventual auction sale.

Similar conduct by DEUTSCHE BANK took place with respect to the other

members of Subclass A.

78.     DEUTSCHE BANK routinely and as a matter of policy or practice

postponed public auctions for members of Subclass A without publishing any

notices of the postponed auctions' rescheduled dates and times (in cases handled

by attorneys at the Law Office off David Rosen, Routh Crabtree & Olsen , P.S. or

RCO Hawaii LLLC) or without publishing in three successive weeks and stating a

new date at least 29 days after the first such publication of the new notice (in cases handled by other law firms).

79.     This conduct towards Subclass A constituted a violation of the power of sale and rendered the foreclosure sale unlawful, invalid and void.

80.     This conduct towards Subclass A had the foreseeable effect of limiting and depressing attendance at postponed auctions and causing auction prices to be lower than they would have been if new notices had been properly posted, served and published as required by the power of sale and the statute.

81.     As a direct and proximate result of the rescheduling of the auctions of members of Subclass A described above, Plaintiffs other than the Limas, as well as the other members of Subclass A, lost the monies they had invested or expended in acquiring the Properties, lost the market value of the Properties, lost the use and rental value of their properties from and after the date they lost possession, and incurred moving expenses and rental expenses, all in amounts they are entitled to recover and to be proved at trial.

82.     By virtue of the foregoing facts, DEUTSCHE BANK is liable for the tort of wrongful foreclosure and sold Plaintiffs' Properties, and those of the other members of the Class, without the lawful authority to do so, and thereby unlawfully and without authority deprived Plaintiffs of title and possession through

purported sales that were void or at the least voidable. Plaintiffs are entitled to restitution for their losses aforesaid.

83. In the case of each named Plaintiff other than the Limas, as well as 96% of the Class members' sales, DEUTSCHE BANK itself was the purchaser at the foreclosure sale that it purported to hold. By virtue of this, DEUTSCHE BANK is a self-dealing mortgagee in those cases and, under established Hawaii law, has the burden to show that it conducted the sales fairly and in accordance with the power of sale, the statute and its common law duties, and must therefore disprove the omissions and acts described herein as wrongful. Its failure to meet that burden renders each such sale wrongful and entitles the mortgagees to the remedies of Hawaii law for a wrongful sale.

## COUNT II – UDAP and UMOC

84. Plaintiffs repeat and reallege the allegations stated above.

85. Plaintiffs, and all members of the Class, are "consumers" or have the standing of "consumers" within the meaning of HRS Section 480 because:

a) Each Plaintiff (and each member of the Class) is a natural person who committed money in an investment by investing borrowed money in real property. Each Plaintiff borrowed the money to make that investment from a financial institution in the trade and business of lending money for purposes of personal investment.

b) Through a real property mortgage either granted or assigned to Defendant DEUTSCHE BANK or its nominee MERS in the course of DEUTSCHE BANK'S trade or business, each Plaintiff (and each member of the Class) pledged the property in which he or she was investing as security for the loan he or she was using to make the investment.

c) Each Plaintiff (and each member of the Class) made payments on that loan, which payments included both principal and interest payments, as well as payments for property taxes and maintenance as required by the mortgage loan covenants, as the means by which each Plaintiff continued to invest in his or her property.  Defendant DEUTSCHE BANK thereafter foreclosed its mortgage on each Plaintiff's property (and the property of each member of the Class) and offered the property for sale to the general public at an open auction.

86.    By virtue of the foregoing, each Plaintiff (and each member of the Class) is a "consumer" within the meaning of H.R.S. § 480-1 with respect to the loan, the mortgage, and the efforts by Defendant DEUTSCHE BANK to collect on the loan and to foreclose the mortgage or otherwise to sell and/or acquire the property in which Plaintiff had invested.

87.    The conduct described above of Defendant DEUTSCHE BANK and

its predecessors for which it is liable occurred "in the conduct of any trade or commerce" because, among other things, the transactions involved the sales of real property at public auctions conducted by Defendant on terms of sale advertised by Defendant to the general public.

88.     Defendant DEUTSCHE BANK also violated H.R.S. § 480-2(a) and injured Plaintiffs and the Class by advertising Plaintiffs' and the Class's Properties for sale (a) without covenants or warranties as to title or encumbrances, and, on many occasions, as sales by mortgagee's quitclaim conveyances and (b) on the condition that a buyer close within 30 days or forfeit a 10% deposit.  Such terms of sale were false, deceptive, and misleading, inasmuch as successful third party bidders frequently received limited warranty deeds, and not quitclaims as advertised in the Class's notices of sale, and sales very frequently were permitted to close more than 30 days after the auction without penalty or forfeiture of deposit.

89.     The above wrongful acts of Defendant DEUTSCHE BANK that deprived Plaintiffs and the other Class members of their property interests were part of a broader scheme that DEUTSCHE BANK implemented to achieve its 96% self-sale rate and maximize the number of properties that it could foreclose and resell thereby reaping additional fees and profits beyond its ordinary servicing fees. That broader scheme included additional unfair and/or deceptive acts or practices

that made it more unlikely that Plaintiffs and other members of the Class would take steps to protect their interests, including.

    a.  encouraging borrowers to miss payments;

    b.  inadequately staffing its loss mitigation and/or loan modification departments;

    c.  losing, refusing, and/or otherwise failing to review and/or approve loan modification applications and short sale requests;

    d.  sending notices of acceleration that did not clearly or properly advise borrowers of their right to bring a lawsuit to stop the sale of their property.

90.    Defendant DEUTSCHE BANK's 96% self-dealing rate is explained by an inherent conflict of interest which courts have recognized arises at **nonjudicial** sales when the Bank arranging the sale can purchase at a distress price using a credit bid, and then retail the property with a broker, keeping additional profits and fees from the additional time period of holding the Property and the frequently higher resale price.

91.    H.R.S. § 480-2(a) declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." "Unfair and deceptive acts or practices" as used in HRS Section 480-2 are referred

to herein as "UDAP". "Unfair methods of competition" as used in HRS Section 480-2 are referred to herein as "UMOC".

92.     DEUTSCHE BANK violated H.R.S. § 480-2(a) by the conduct alleged above, which constituted UDAP and/or UMOC, inasmuch as such conduct was tortious as alleged in Count I and performed by an entity in trade or commerce. When common law torts are performed by defendants acting in trade or commerce they constitute UDAP and UMOC, and the Plaintiffs are therefore entitled to three-fold their damages recoverable for the common law tort under HRS Section 480-13.

93.     The above-alleged conduct by Deutsche also constituted both UDAP and UMOC because violated a clear and established public policy that the provisions of H.R.S. §§ 667-5 et seq. and the terms and conditions of mortgage contracts were to be strictly followed by foreclosing mortgagees and that said mortgagees sell the property pledged in a manner calculated to give the best advantage to the owner of the property and use reasonable efforts to secure the "best possible price"; was immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and constituted representations, omissions, or practices that were objectively material and misleading to the detriment of consumers such as Plaintiffs, and to other consumers, who were discouraged from bidding at public auctions based on the purported terms of sale therein.

94.    Because the sales of Plaintiffs' Properties and the Properties of the other members of the Class were in violation of HRS Section 480-2(a), any and all such sales and sales contracts are void under HRS Section 480-12 (which provides that "[a]ny contract or agreement in violation of this chapter is void and is not enforceable at law or in equity.")

95.    As redress for Defendants' repeated and ongoing violations of H.R.S. § 480-2(a), Plaintiff and the Class are entitled to damages, including the monies they had invested or expended in acquiring the Properties, loss of the market value of the Properties, loss of the use and rental value of their properties from and after the date they lost possession, and moving expenses and rental expenses, and any other damages, whether characterized as restitution or otherwise, available to a property owner whose property has been sold by another in a void transaction, together reasonable attorneys' fees and costs, and declaratory and injunctive relief, pursuant to H.R.S. § 480-13.

96.    By virtue of the foregoing, Defendant DEUTSCHE BANK is liable to Plaintiffs and all members of the Class under H.R.S. Chapter 480, and Plaintiffs and the other members of the Class are entitled to recover treble their economic damages sustained as a result of the above-described conduct in amounts to be proved at trial, to receive all proceeds and profits that DEUTSCHE BANK made

or received by virtue of its conduct, and to a declaration that each such sale was void.

97.     The conduct of DEUTSCHE BANK as described herein was knowing, willful, wanton, reckless and /or grossly negligent, and further demonstrates a conscious disregard for the rights of others.  Plaintiffs and the other members of the Class are therefore entitled to an award of punitive damages in amounts to be proved at trial that are sufficient to adequately punish DEUTSCHE BANK given its financial condition and to deter it from such conduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all those similarly situated, pray for judgment against DEUTSCHE BANK as follows:

(1)     For damages against DEUTSCHE BANK in an amount to be determined at trial, including both damages at law and in equity, including but not limited to rescissory or equitable damages intended to be equivalent to restoration of title and possession unlawfully taken from Plaintiffs and the other members of the Class, market value, lost rental value and sums expended by Plaintiffs and other members of the Class in the acquisition and/or improvement of their wrongfully sold properties, moving or rental of alternate properties;

(2)     For appropriate restitution;

(3)     For reimbursement of costs and expenses, including reasonable provision for attorneys' fees in accordance with H.R.S. Chapter 480;

(4)     For prejudgment interest if applicable;

(5)     For treble damages as provided by law;

(6)     For any civil penalties applicable under H.R.S. § 480-13.5;

(7)     For punitive damages;

(8)     For declaratory relief declaring (a) the publication of Notices of Foreclosure Under Power of Sale with offers of quitclaim deeds or their equivalents and without required property descriptions or required notices of acceleration, (b) the failure to properly publish new notices of sales that had not been held on their noticed date, and (c) the sales of the Properties of Plaintiffs and the members of the Class, all to be violations of DEUTSCHE BANK's legal duties, without legal effect and void under both the common law and HRS Section 480-12;

(9)     Ordering the return of title and possession of any properties of the members of the Class still held in the name of DEUTSCHE BANK or its agents and allowing Class members who wish to recover their wrongfully foreclosed property from any new purchaser to elect to do so if not barred by any limitations period instead of receiving that portion of their share of any Class award that is intended to compensate for return of title and possession; and

38

(10)   For such further and additional relief as the Court deems appropriate

and just.

DATED: Honolulu, Hawaii, March _____, 2018.


_____
JOHN F. PERKIN
JAMES J. BICKERTON
STANLEY H. ROEHRIG
VAN-ALAN H. SHIMA
BRIDGET G. MORGAN

Attorneys for Plaintiffs, individually
and on behalf of all others similarly
situated.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| LIONEL LIMA, JR., and BARBARA-ANN DELIZO-LIMA; and CALVIN JON KIRBY II individually and on behalf of those similarly situated,<br><br>        Plaintiffs,<br><br>   vs.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY; THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION; DAVID B. ROSEN, and Doe DEFENDANTS 1-50,<br><br>        Defendants. | Civil No. 12-00509 SOM-RLP (Class Action)<br><br>**DEMAND FOR JURY TRIAL;** |

## DEMAND FOR JURY TRIAL

Plaintiffs, by and through their attorneys, hereby demand trial by jury on all issues so triable herein.

DATED: Honolulu, Hawaii, March ___, 2018.

_____
JOHN F. PERKIN
JAMES J. BICKERTON
STANLEY H. ROEHRIG
VAN-ALAN H. SHIMA
BRIDGET G. MORGAN
Attorneys for Plaintiffs LIONEL LIMA, JR., BARBARA-ANN DELIZO-LIMA, and CALVIN JON KIRBY, II, individually and on behalf of all others similarly situated.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| LIONEL LIMA, JR., and BARBARA-ANN DELIZO-LIMA; and CALVIN JON KIRBY II individually and on behalf of those similarly situated,<br><br>   Plaintiffs,<br><br> vs.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY; THE LAW OFFICE OF DAVID B. ROSEN, A LAW CORPORATION; DAVID B. ROSEN, and Doe DEFENDANTS 1-50,<br><br>   Defendants. | Civil No. 12-00509 SOM-RLP (Class Action)<br><br>**SUMMONS** |

## SUMMONS

**TO THE ABOVE-NAMED DEFENDANTS**

   You are hereby summoned and required to file with the Court and serve upon Bickerton Lee Dang & Sullivan, 745 Fort Street, Suite 801, Honolulu, Hawaii 96813, Plaintiffs' attorneys, whose address is stated above, an answer to the First Amended Complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the date of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded

in the First Amended Complaint.

**THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 P.M. AND 6:00 A.M. on PREMISES NOT OPEN TO THE GENERAL PUBLIC, UNLESS A JUDGE OF THE ABOVE-ENTITLED COURT PERMITS, IN WRITING ON THIS SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.**

**FAILURE TO OBEY THIS SUMMONS MAY RESULT IN AN ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DISOBEYING PERSON OR PARTY.**

DATED:  Honolulu, Hawaii, _____, 2018.

_____

CLERK OF THE ABOVE-ENTITLED COURT